675 P.2d 999

**Louis E. COVALT, Plaintiff-Appellee,**

v.

**William L. HIGH, Defendant-Appellant.**

**No. 7206.**

Court of Appeals of New Mexico.

Dec. 6, 1983.

Certiorari Denied Jan. 18, 1984.

Sarah Michael Singleton, Santa Fe, David Pearlman, Albuquerque, for defendant-appellant.

Jonathan W. Hewes, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for plaintiff-appellee.

## OPINION

DONNELLY, Judge.

Can a partner recover damages against his co-partner for the co-partner's failure or refusal to negotiate and obtain an increase in the amount of rental of partnership property? Under the circumstances herein, we hold no right of recovery exists.

The plaintiff, Louis E. Covalt, filed suit against defendant, William L. High, seeking (1) the sale of real property in lieu of partition, (2) an accounting as to former partnership property, and (3) seeking both actual and punitive damages. Covalt alleged High had breached his fiduciary duty as a partner resulting in a loss of increased rentals. Covalt also filed a separate action against Concrete Systems, Inc. (CSI), Mildred L. High and Mark High (wife and son of William High), as corporate shareholders, seeking dissolution of the corporation, damages for alleged misuse of corporate funds, and seeking a dissolution and accounting of partnership assets. By order of the district court the two cases were consolidated for trial.

The answers of defendants denied any wrongdoing and contained a counterclaim asserting, *inter alia*, that Covalt as a former employee of CSI had wrongfully converted corporate assets and wrongfully interfered with contractual relations between the corporation and others.

The trial court ordered that Covalt's claim for loss of rental income, allegedly owed by defendant to the former partnership, be bifurcated from the remaining issues and tried separately to the court. Following trial thereon, Covalt was awarded judgment against William L. High, individually, in the sum of $9,500, plus prejudgment interest in the sum of $2,269.

High appeals the partial judgment entered solely against him. The single issue presented on appeal is whether the trial court erred by ruling that High breached a fiduciary duty of fairness to his former partner Covalt by failing to negotiate and obtain an increase in the amount of rental for the partnership realty.

## FACTS

Covalt and High were corporate officers and shareholders in CSI. Covalt owned 25% of the stock and High owned the remaining 75% of the stock. Both men received remuneration from the corporation in the form of salaries and bonuses. In late 1971, after both High and Covalt had become corporate officers, they orally agreed to the formation of a partnership. The partnership bought real estate and constructed an office and warehouse building on the land. In February, 1973, CSI leased the building from the partnership for a five-year term. Following the expiration of the initial term of the lease, CSI remained a tenant of the building; the corporation and the partnership orally agreed to certain rental increases. The corporation made substantial improvements to the leasehold. Under the original lease any improvements to the premises were to accrue to the partnership upon termination of the lease.

In December, 1978, Covalt resigned his corporate position and was employed by a competitor of CSI. Covalt, however, remained a partner with High in the ownership of the land and the building rented to CSI. On January 9, 1979, Covalt wrote to High demanding that the monthly rent for the partnership real estate leased to CSI be increased from $1,850 to $2,850 per month. Upon receipt of the letter, High informed Covalt he would determine if the rent could be increased. Thereafter, however, High did not agree to the increased rent and took no action to renegotiate the amount of the monthly rent payable.

At the trial, High testified that he felt CSI could not afford a higher rent and that the corporation had a poor financial status. The trial court, however, adopted findings that CSI could afford the requested rental increase and that High's failure to assent to his partner's demand was a breach of his fiduciary duty. The trial court also found that at the time of Covalt's demand, a

reasonable monthly rental would have been $2,850 per month or more.

The trial court adopted findings of fact, that:

18. At all material times, William High was the managing partner of the partnership and had a duty of utmost fairness to his partner, Mr. Covalt, which required him to obtain a reasonable rental on the property.

\* \* \* \* \* \*

55. William High refused to see that the rental on the Richmond property was raised to $2,850 a month, and said refusal was a breach of his fiduciary duty of utmost fairness to his partner, Louis Covalt.

The court also found that the partnership between High and Covalt was dissolved by written agreement dated August 27, 1980. Under the terms of the dissolution, High paid Covalt $170,000, in cash, plus installment payments for his one-half interest as a partner, and for other property in which the two parties held joint interests.

The court further found that the rental rate in effect when the written lease expired on January 31, 1978, was $1,850 per month, no other written lease was ever executed by the partnership and CSI, and that the partners never had any specific agreement as to how the partnership would set the rent to be charged CSI. As between the partners, that calculation was left up to High. The court adopted a finding that High, as Covalt's partner, did not agree with Covalt's demand to raise the monthly rental payable by CSI.

The trial court also found:

34. On January 9, 1979, when Covalt made his demand on [CSI] for a rental increase, High, as President of [CSI] owed a duty to the Corporation and all shareholders, including Covalt, to exercise his best judgment to operate the Corporation as profitably as possible.

35. That High, in failing or refusing to accede to the demand by Covalt to raise the rent, was fulfilling this duty owed to the Corporation and its shareholders, including Covalt.

Based on the foregoing findings, the trial court concluded that High breached his fiduciary duty to Covalt, resulting in damage to Covalt in the sum of $9,500 as lost rentals, plus prejudgment interest through April 30, 1982, in the amount of $2,269.66.

## FIDUCIARY DUTY AS A PARTNER

Did High breach a fiduciary partnership duty to Covalt warranting an award of damages?

■■■ The status resulting from the formation of a partnership creates a fiduciary relationship between partners. The status of partnership requires of each member an obligation of good faith and fairness in their dealings with one another, and a duty to act in furtherance of the common benefit of all partners in transactions conducted within the ambit of partnership affairs. NMSA 1978, § 54–1–21; *Citizens Bank of Clovis v. Williams*, 96 N.M. 373, 630 P.2d 1228 (1981). As a fiduciary, each partner has a duty to fully disclose to the other, all material facts which may affect the business of the partnership. NMSA 1978, § 54–1–20; *C.B. & T. Co. v. Hefner*, 98 N.M. 594, 651 P.2d 1029 (Ct.App.1982). As stated in the text, J. Crane & A. Bromberg, *Crane & Bromberg on Partnership*, § 68 at 390 (1968), "[a] partner must account for any profit acquired in a manner injurious to the interests of the partnership \* \* \*."

The problems which have arisen between the parties herein, emphasize the importance of formulating written partnership agreements detailing the rights and obligations of the partners. Here, at the time of Covalt's demand for an increase in rents, both he and High simultaneously occupied the positions of corporate shareholders in CSI and as partners engaged in the ownership and rental of real property to the same corporation. Prior to Covalt's resignation as a corporate officer, he also served as vice president of CSI. The trial court found that High occupied the position of managing partner of the partnership.

■ Except where the partners expressly agree to the contrary, it is a fundamental principle of the law of partnership that all partners have equal rights in the management and conduct of the business of the partnership. NMSA 1978, § 54–1–18(E); *see also Rogers v. McDonald*, 224 Ga. 599, 163 S.E.2d 719 (1968); *Elle v. Babbitt*, 259 Or. 590, 488 P.2d 440 (1971). As specified in the Uniform Partnership Act adopted by New Mexico, where there is a difference of opinion between the partners as to the management or conduct of the partnership business, the decision of the majority must govern. NMSA 1978, § 54–1–18(H).

■ Under Section 54–1–18(E), Covalt was legally invested with an equal voice in the management of the partnership affairs. Assuming, but not deciding, that High's status as a managing partner is not to be considered, neither partner had the right to impose his will or decision concerning the operation of the partnership business upon the other. The fact that a proposal may in fact benefit the partnership does not mandate acceptance by all the partners. As specified in Section 54–1–18(H), "any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners; but no act in contravention of any agreement between the partners may be done rightfully without the consent of all the partners."

■ As stated in *Lindley on the Law of Partnership*, Chapter 14 at 354 (E. Scamell 12th ed. 1962) (hereinafter referred to as *Lindley*), as to differences arising in the ordinary scope of the partnership business:

> [I]f the partners are equally divided, those who forbid a change must have their way * * *. [O]ne partner cannot either engage a new or dismiss an old servant against the will of his co-partner; nor, if the lease of the partnership place of business expires, insist on renewing the lease and continuing the business at the old place.

In *Summers v. Dooley*, 94 Idaho 87, 481 P.2d 318 (1971), the Supreme Court of Idaho was confronted with a similar problem arising out of a partnership of two individuals. There, the partners were engaged in a trash collection business and each contributed to the necessary labor. Over the objection of one partner, the other hired an additional employee. The disagreement over the hiring and compensation of the new employee resulted in a suit between the partners. The one partner sought to compel his co-partner to contribute to the expenses for hiring the additional man. The court held that, based upon the Idaho statute, mirroring the Uniform Partnership Act and identical to that adopted by New Mexico, the statutory language that any differences between partners as to the ordinary course of partnership business " 'may be decided by a majority of the partners,' " is mandatory rather than permissive in nature. 94 Idaho at 89, 481 P.2d at 320.

■ In keeping with *Lindley* and *Summers*, as between the partners themselves, in the absence of an agreement of a majority of the partners—an act involving the partnership business may not be compelled by the co-partner. If the parties are evenly divided as to a business decision affecting the partnership, and in the absence of a written provision in the partnership agreement providing for such contingency, then, as between the partners, the power to exercise discretion on behalf of the partners is suspended so long as the division continues. The rule is different, however, as to transactions between partners and third parties. *See Dotson v. Grice*, 98 N.M. 207, 647 P.2d 409 (1982) (holding that in dealing with third parties a partner has the authority to act on behalf of the partnership in the usual way, even without the consent of the other partner).

Similarly, it is observed in 1 J. Barrett & E. Seago, *Partners and Partnerships Law and Taxation*, Chapter 5, § 7 at 484 (1956):

> Where the partnership consists of only two partners there is ordinarily no question of one partner controlling the other and there is no majority. The rights of each of the two partners are equal. If the partners are unable to agree and if

the partnership agreement does not provide an acceptable means for settlement of this disagreement, the only course of action is to dissolve the partnership.

At the time of the formation of the partnership, both Covalt and High were officers and shareholders of CSI. Each was aware of the potential for conflict between their duties as corporate officers to further the business of the corporation, and that of their role as partners in leasing realty to the corporation for the benefit of the partnership business. In the posture of being both a landlord and representatives of the tenant they had conflicting loyalties and fiduciary duties. After Covalt's resignation as an officer of the corporation he continued to remain a shareholder of the corporation. Each party's conflict of interest was known to the other and was acquiesced in when the partnership was formed.

Under the facts herein, in the absence of a mutual agreement between the partners to increase the rent of the partnership realty, we hold that one partner may not recover damages for the failure of the co-partner to acquiesce in a demand by the plaintiff that High negotiate and execute an increase in the monthly rentals of partnership property with CSI. Thus, there was no breach of a fiduciary duty. In the absence of a mutual agreement, or a written instrument detailing the rights of the parties, the remedy for such an impasse is a dissolution of the partnership.

Costs on appeal including costs to appellant in Court of Appeals Cause No. 5881 wherein we remanded this appeal for proper findings and conclusions, are awarded to appellant; the judgment awarding damages is reversed.

IT IS SO ORDERED.

WALTERS, C.J., and WOOD, J., concur.