698 P.2d 446

**In the Matter of the ESTATE OF Joe VINCIONI, Deceased.**

**Nos. 7754–7769.**

Court of Appeals of New Mexico.

Feb. 7, 1985.

Certiorari Denied April 12, 1985.

Douglas G. Voegler, Marchiondo & Berry, P.A., Albuquerque, for Vincioni Children, appellants.

Paul A. Kastler, Raton, for Lesleigh Gay Cash Hicks & Don Cash, appellants.

William C. Erwin, Erwin & Davidson, Raton, for Julio Vincioni, Special Administrator.

Harl D. Byrd, Santa Fe, for Lucia Ottaviani, appellee.

## OPINION

DONNELLY, Chief Judge.

Appellants Lesleigh Cash Hicks, Don Cash, and the Vincioni children appeal from a judgment of the district court adjudicating that Joe Vincioni died intestate, refusing to find that the documents proffered by appellants constituted an enforceable contract to make a will in favor of appellants and others, and denying the admission of extrinsic evidence to prove the existence of a contract to make a will between the decedent and his deceased wife. We affirm.

## FACTS

The decedent, Joe Vincioni, a resident of Colfax County, died on September 13, 1982. The decedent's wife, Elizabeth Vincioni, predeceased him in January 1982. He was the sole legal heir of her estate. Joe Vincioni had no surviving children, but had a surviving sister and brother and numerous nieces and nephews in Italy and the United States.[1] Appellant Lesleigh Cash Hicks is a niece of decedent and Don Cash is a brother-in-law.

Following decedent's death the district court of Colfax County appointed Julio Vincioni, a surviving brother, as the special administrator of decedent's estate. In the process of inventorying the property of decedent, the special administrator discovered among the decedent's personal effects an envelope containing two documents, both dated July 1, 1979. They appeared to the special administrator to be testamentary in nature. He filed the documents with the court and petitioned the court to determine

---

1. Decedent was survived by Julio Vincioni, a brother, Lucia Ottaviani, a sister, and eleven nieces and nephews.

whether they constituted a valid last will and testament of decedent. He asked the court to construe the documents and declare what effect should be given to them.

The three documents consisted of an envelope (Plaintiff's Exhibit 1) and two papers contained in it (Plaintiff's Exhibits 2 & 3). Typewritten on the outside of the envelope were the words "Agreement To Be Opened In the Event of Our Death." Plaintiff's Exhibit 2 was a single page document stating in part:

Raton, New Mexico
July 1, 1979

To Whom It May Concern:

In the event of our death we wish to leave the following to our Niece, Lesleigh Gay Cash.

1 Complete Set Sterling Flatware (In Safe)

1 Sterling Silver Water Pitcher

[Listing of miscellaneous personal property has been omitted.]

All the land listed in our name in Linwood Acres.

Regarding Spur, Inc. The Corporation owes us a note amounting to $88,000.00. After the note is paid—the balance is to be divided—one half going to Lesleigh Gay Cash and one half to Donald J. Cash.

Dated this 1st day of July, 1979

Raton, New Mexico

s/Joe Vincioni
s/Elizabeth Vincioni

Plaintiff's Exhibit 3 was a similar document, which stated:

July 1, 1979
Raton, New Mexico

To Whom It May Concern:

In the event of our death we wish to leave $5,000.00 to each of Lucia Ottaviani's [sic] five children.

The balance of our estate is to go to the Julio Vincioni children which is to be divided in equal shares.

Dated this 1st day of July, 1979

Raton, New Mexico

s/Joe Vincioni
s/Elizabeth Vincioni

On December 29, 1982, appellant Lesleigh Cash Hicks entered her appearance in the estate proceedings and filed an answer contending that the documents filed with the court were valid wills and testamentary instruments. Alternatively she asserted that if the documents were not found to be valid testamentary instruments, they should be determined to be contracts to make wills between decedent and Elizabeth Vincioni, his deceased wife, governing the manner in which their property should be disposed after their deaths.

The court held a hearing in December 1983 to determine the validity of the documents relied upon by appellants. At the conclusion of the hearing, the court adopted findings of fact and conclusions of law determining that the three exhibits were not properly executed or witnessed as required by law and did not constitute valid testamentary dispositions. NMSA 1978, § 45-2-502. The court also found that the documents did not constitute enforceable contracts to make wills. During the hearing, the trial court had denied the admission into evidence of proffers of testimony by the appellants, Lesleigh Cash Hicks & Julio Vincioni, that would have purportedly shown the decedent's interpretation of Plaintiff's Exhibits 1, 2, and 3 and that a valid agreement existed, between the decedent and his wife, to leave their property to the appellants and other relatives.

## EXCLUSION OF EVIDENCE

Appellants have not challenged on appeal the trial court's finding and conclusion that Plaintiff's Exhibits 1, 2, and 3 were not properly executed wills and testaments as required by Section 45-2-502. However, appellants contend that the trial court erred in excluding evidence calculated to explain Exhibits 1, 2, and 3. Appellants sought to present extrinsic evidence through Julio Vincioni, the special administrator, and Lesleigh Hicks, concerning the existence of an alleged oral contract to devise property as provided in the three exhibits. Appellants claim that this extrinsic evidence should have been admitted to fully explain the agreement reached in Ex-

hibits 1, 2, and 3. The trial court found that the exhibits did "not express the essential terms of a contract [as per NMSA 1978, Section 45–2–701] with requisite definiteness and certainty, and, at most, manifest an unexecuted intention to dispose of property."

The trial court sustained an objection to the admission of the testimony to explain Exhibits 1, 2, and 3 on the grounds that it was contrary to the provisions of Section 45–2–701 of the Probate Code. The trial court judge determined that Section 45–2–701(A)(3) required that Exhibits 1, 2, and 3, when construed together, constitute a writing signed by the decedent evidencing the contract. This writing would have to first evidence the existence of a contract or be sufficiently drafted so that there could be an inference that a valid contract existed within the four corners of the documents. No extrinsic evidence was allowed to fulfill the contractual inadequacies of the terms contained in the exhibits. However, the court permitted a tender of the extrinsic testimonial evidence by question and answer pursuant to NMSA 1978, Evid.Rule 103 (Repl.Pamp.1983).

Included in the tender was the testimony of decedent's brother, Julio Vincioni, that prior to decedent's death he had several discussions with the decedent concerning his estate plans. Julio Vincioni stated that the decedent showed him Plaintiff's Exhibits 1, 2, and 3 and also showed him where the safe was in which he was keeping the envelope and the papers. Also included in the tender of proof was testimony by Lesleigh Hicks that following the death of decedent's wife, Elizabeth Vincioni, decedent made a gift to her of numerous items of personal property which were listed in Plaintiff's Exhibit 2, including a set of sterling silver flatware, a silver tea service, jewelry, a cedar chest, Nambe ware, and a set of china.

Hicks also testified in her tender that decedent had told her his wife had always wanted her to have the real estate located in Linwood acres subdivision in Raton and "[t]his property will be yours some day."

Hicks also testified that decedent had told her "this is the way she [Elizabeth Vincioni] and he wanted it [the realty] to go."

The trial court denied admission of the tender and held that extrinsic evidence seeking to prove the existence of an alleged oral contract to devise property was inadmissible unless evidenced by a memorandum in writing setting out the essential terms of the agreement.

Section 2–701 of the Uniform Probate Code provides:

A. A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after the effective date of *this Act* [the Probate Code] can be established only by:

(1) provisions of a will stating material provisions of the contract;

(2) an express reference in a will to a contract [and extrinsic evidence proving the terms of the contract]; *or*

(3) a writing signed by the decedent evidencing *the* [a] contract.

B. The execution of a joint will or *contemporaneously executed* [mutual] wills does not create a presumption of a contract not to revoke the will or wills, *unless otherwise expressed in both the joint will or the contemporaneously executed wills.*

The bracketed portion of the above statute was omitted from the language of this section as adopted in New Mexico. The underscored language set out above was added to the state's version of Section 2–701 of the Uniform Act when enacted by our legislature. *See* § 45–2–701.

As stated in the commentary to Section 2–701 of the Uniform Probate Code, the drafters of the Code intended the writing requirement of this Section to restrict the means by which proof of an oral contract to make a will could be established. The committee comments further provide:

It is the purpose of this section to tighten the methods by which contracts concerning succession may be proved * * *.

This section requires that either the will must set forth the material provisions of the contract, or the will must make express reference to the contract and extrinsic evidence prove the terms of the contract, or there must be a separate writing signed by the decedent evidencing the contract.

■ The deliberate exclusion of language in the New Mexico Probate Code, Section 45–2–701, that would have permitted the use of extrinsic evidence to show the existence and terms of a contract to make a will or devise property evinces an intention by our legislature to impose restrictions even narrower than those provided in Section 2–701 of the Uniform Probate Code. New Mexico by adopting language in part different from the Uniform Probate Code under Section 45–2–701(A)(3), we think disallows any extrinsic evidence for proof of the essential terms of a contract to make a will unless a writing is produced and signed by decedent which evidences the essential terms of the contract. This interpretation of the requirements of subparagraph A(3) brings this subsection in harmony with the restrictive requirements of subsections (1) and (2).

The rationale underlying a statutory provision requiring that contracts to make ·wills must be in writing, is to circumvent "the many opportunities which exist for fraud and perjury in establishing an oral contract to make a testament. * * *" *See* Page, *The Law of Wills* § 10.10, at 463 (1960). As noted in Page, a further reason to restrict oral proof of an alleged contract to make a will is that, "[t]he death of the promisor makes it impossible to contradict the [oral] testimony to the effect that he [purportedly] made such promise; and the fact that the transaction never happened makes it all the harder to disprove it if the guilty parties have been careful to make their story fit the possibilities of time and place." *Id.* at 464. In *Lindley v. Lindley*, 67 N.M. 439, 356 P.2d 455 (1960), the court noted that for "reasons of public policy, courts should be cautious to sustain contracts to make mutual wills, because such

contracts, in effect destroy the revocability of wills, and fail to allow for changes in circumstances as years pass."

New Mexico's adoption of Section 45–2–701 effectively creates a mini-statute of frauds for contracts to make wills and adds a writing requirement to the common-law rule that a contract to make a will must be clearly established and be certain and unambiguous in its terms. *McDonald v. Polansky*, 48 N.M. 518, 153 P.2d 670 (1944) (Justice Mabry quoted with approval from 4 *Page on Wills*, § 1711, the rule that "a contract to make a will must, in order to be enforceable, 'be clearly proved and be certain and unambiguous in all its terms' "); *see Matter of Estate of Moore*, 137 Ariz. 176, 669 P.2d 609 (1983).

■ The differences in the language of the New Mexico statute and the language of the Uniform Act reveal an intention on the part of our legislature to prevent the use of oral testimony to establish the existence of an oral agreement to make a will or to devise property, unless the agreement is ·corroborated by a writing signed by decedent, setting out the essential terms of the contract. Under this state's version of Section 2–701 of the Uniform Probate Code, essential terms of the agreement must be expressly contained within the four corners of the written instrument or document signed by the party sought to be charged before any extrinsic evidence will be admitted about the agreement. Extrinsic evidence regarding terms of the contract which are not essential to the agreement is admissible.

Prior to the adoption of the Uniform Probate Code, the courts of this state did not favor contracts to make wills or devise property, *McDonald v. Polansky*, but certain oral agreements to make wills were enforced if proved by clear, convincing, and satisfactory evidence. *Lindley v. Lindley*. The burden of establishing the existence of an agreement to execute joint or mutual wills or to devise property is upon the party claiming the existence of the agreement. *Bee v. Smith*, 6 Cal.App.3d 521, 86 Cal.Rptr. 115 (1970). With the enactment

of the New Mexico Probate Code, prior common law rules for establishing the validity of contracts to make wills, whether oral or in writing, were subjugated to the new statutory requirements.

 Under Section 45–2–701, as enacted by this state, the purported will or contract to make a will must contain, or by reference to some other document, refer to, all of the essential terms of the contract in order to satisfy the statute of frauds. The essential terms of the contract may be contained in more than one document. Section 45–2–701 only operates to exclude extrinsic oral evidence for proof of essential terms of the contract. This interpretation is consonant with the rule announced in *Pitek v. McGuire*, 51 N.M. 364, 371, 184 P.2d 647, 651 (1947). In *Pitek*, the court held, "To satisfy the statute of frauds [pertaining to the sale of land] the contract itself must be in writing; or if verbal, then there must have been some writing subsequently made however informal, stating each of its essential elements, signed by the person to be charged, or by his authorized agent acting for him." *See also* 94 A.L.R.2d 921, at 947. *Compare Aragon v. Boyd*, 80 N.M. 14, 450 P.2d 614 (1969).

. A testamentary instrument which fails to make any reference to the claimed contract is fatally deficient as a memorandum of a contract to devise or bequeath, within the contemplation of Section 45–2–701. A will may serve as a memorandum of a contract to devise or bequeath property, or an invalid will may provide sufficient evidence to establish the contract if it also establishes the existence of the agreement, the essential terms of the agreement, and is signed by the party to be charged. Section 45–2–701; Annot., 94 A.L.R.2d 921, at 925 (1964); Page, *supra*, § 10.12, at 468.

 The mere making of joint or mutual wills is not sufficient evidence of a contract to devise or bequeath property or a contract not to revoke a will.[2] Section 45–2–701(B). In order to limit the ambulatory nature of a testamentary instrument, joint or mutual wills must contain language affirming the contractual intent of the testators. *Id. See also* 60 A.L.R. 627 (1929); 169 A.L.R. 12 (1947); *Brown v. Brown*, 53 N.M. 379, 208 P.2d 1081 (1949). As a general rule wills are ambulatory, and revocability is an important aspect of a will. *McDonald v. Polansky; Lindley v. Lindley. See also* Page, *supra*, § 5.17, at 208 (a clause in a will providing that it not be revoked may have no effect in preventing revocation unless bottomed upon a contract). Any agreement limiting or restricting the right to revoke or modify a will must be proven by clear, satisfactory, and convincing evidence. *Lindley v. Lindley.* A joint will becomes a mutual will (contractual in nature), only when executed pursuant to an agreement between testators to dispose of their property in a particular manner, each in consideration of the other. *Davis v. KB & T Co.*, 309 S.E.2d 45 (W.Va. 1983). A joint and mutual will becomes binding on a survivor when the survivor accepts the benefits thereunder. *Brown v. Brown.*

 The trial court properly denied admission into evidence of the proffer of oral testimony seeking to establish the essential elements of an oral agreement to devise or bequeath property. Section 45–2–701 does not recognize oral agreements to devise or bequeath property except where the other requisites specified by the statute are present. A written document, or documents, must be produced which contain the essential terms of the contract.

---

**2.** A "joint will" is a single testamentary instrument which is jointly executed by two or more persons intending it to constitute their respective wills. *Salley v. Burns,* 220 Va. 123, 255 S.E.2d 512 (1979). "Mutual wills" are defined as wills executed pursuant to an agreement between testators to dispose of their property in a particular manner, each in consideration of the other. *Persson v. Dukes,* 280 Md. 194, 372 A.2d 240 (1977). "Reciprocal wills" are those in which two or more testators make testamentary dispositions in favor of each other. Reciprocal wills may be contained in one instrument in which case the will is both joint and reciprocal or they may be done by separate wills. *See In re Will of McDowell,* 81 N.M. 562, 469 P.2d 711 (1970); *see also Father Flanagan's Boys' Home v. Turpin,* 252 Iowa 603, 106 N.W.2d 637 (1960).

Plaintiff's Exhibits 1, 2, and 3 failed to establish by clear, convincing, and satisfactory evidence, embodied within the four corners of the documents, the essential elements of a binding agreement between decedent and his deceased wife to convey property to appellants. Specifically, the document failed to evidence a valid and enforceable agreement under Section 45–2–701 because of the absence of an essential term in the agreement. The parties did not evidence in writing an intent to be mutually bound to make a particular disposition. *See* § 45–2–701(B).

The judgment of the district court is affirmed.

IT IS SO ORDERED.

BIVINS and MINZNER, JJ., concur.