787 P.2d 428

Gemma O. ROSELLI,
Plaintiff–Appellee,

v.

RIO COMMUNITIES SERVICE STA-
TION, INC., a New Mexico corporation,
the Estate of Vito Roselli, Deceased,
and Vincent R. Roselli, individually,
and in his capacity as personal repre-
sentative of the Estate of Vito Roselli,
Defendants–Appellants.

No. 17965.

Supreme Court of New Mexico.

Feb. 14, 1990.

Rehearing Denied March 13, 1990.

Rhodes & Salmon, William C. Salmon, Albuquerque, for defendants-appellants.

Eaves, Darling, Anderson & Porter, Robert D. Gorman, Albuquerque, for plaintiff-appellee.

## OPINION

WILSON, Justice.

Rio Communities Service Station, Inc. (Rio), Vito Roselli's Estate (Estate) and Vincent R. Roselli (Vincent), defendants-appellants, appeal the trial court's order and partial final summary judgment in favor of Gemma O. Roselli (Gemma), plaintiff-appellee. We reverse and remand for a trial on the merits.

FACTS

In 1974 Vito Roselli (Vito) married Gemma. At that time, Vito separately owned all Rio's stock and the land beneath Rio, and was Rio's president. Gemma separately owned a personal residence, household furnishings, and a vehicle. The couple later transmuted their separate property into community property, and Gemma became an officer and director of Rio. Vincent, Vito's son from a prior marriage and also a Rio officer and director, began working at Rio in July 1973. He claims that in 1976, Vito orally promised him forty-nine percent of Rio's stock if he worked at Rio for five years. Vincent completed five years' work at Rio in 1981 and later obtained blank stock certificates, for forty-nine percent of Rio's stock, which Vito did not sign. The parties dispute Vito's intent to transfer Rio stock to Vincent. Vito fixed compensation amounts for himself and Vincent, and used Rio funds for personal expenses. Vincent and Gemma knew and approved of Vito's use of Rio funds. On June 18, 1981, Vito and Gemma bought two Northern Life Insurance Company (Northern) policies, totalling $30,351.39, naming Gemma as beneficiary. Vito was the policies' owner and insured, and Rio paid the premiums. In March 1983 Vito named Vincent beneficiary of these policies, without Gemma's knowledge. Vito also directed Northern to mail policy information to his office, rather than his home. In May 1983 Vito began an extra-marital affair, which Gemma discovered at trial. Vincent alleges that Gemma also had an extra-marital affair.

On September 22, 1983, Vito and Gemma executed a warranty deed conveying the land to Rio. Gemma claims she executed the deed in exchange for Vito's oral promise to leave her all his property at his death. She also claims Vito did not intend to transfer the land's title to Rio at that time. The couple kept the deed at home. A few years before his death, Vito gave Vincent the deed and told him to take it home. Vincent kept the deed in his home floor safe, along with personal papers and some corporate insurance papers. Vincent never looked at the deed, and Vito never discussed it with him.

On September 27, 1983, Vito executed a will leaving Gemma all his property, except for $100 bequests to his children. Upon execution, Vito told a testamentary witness that he signed the will only to satisfy Gemma and he intended to make a new will leaving her nothing. That same day Vito bid his accountant to transfer forty-nine percent of Rio's stock to Vincent, claiming the board of directors unanimously approved the transfer. Gemma did not approve the transaction. Corporate books

and subsequent tax returns show Vincent owned forty-nine percent of Rio's stock. In May 1984 Vito gave Vincent title to a Chevy El Camino vehicle, but kept possession. Vincent claims Vito intended him to have the vehicle at Vito's death.

On June 21, 1984, Vito executed a new will leaving twenty-six percent of his Rio stock to Vincent, $100 bequests to his other children, a ring to his brother, and the rest of his estate to Gemma. Also on June 21, 1984, Vito bought a Republic National Life Insurance Company (Republic) policy, totalling $20,057, naming Gemma as beneficiary. Rio also paid this policy's premiums. At some point, the parties discussed an agreement in which Gemma would receive all insurance policy proceeds upon Vito's death, and Vincent would receive all interests in Rio. The parties dispute whether they agreed to this plan. In August 1984 Vito and Gemma renewed their marriage vows.

A few days before his death, Vito retrieved the deed from Vincent and took it to a meeting with his attorney on May 19, 1986. At that meeting, Vito told his attorney that Gemma had renounced all interest in the land. On May 21, 1986, Vito died. That same day, Vito's attorney wrote advising him to record the deed. His attorney recorded the deed on May 25, 1986, six days after Vito's death. At Vito's death the Northern policies paid $5,893.09 in Rio debts. The rest of the proceeds, $24,-458.30, were paid jointly to Gemma and Vincent and deposited in a certificate of deposit pending appeal. Gemma received the Republic policy proceeds at Vito's death.

On October 20, 1986, Gemma filed an eight-count complaint against the defendants seeking: (1) a declaratory judgment entitling Gemma to one-half the Northern policies' proceeds and seventy-four percent of Rio's stock; (2) quiet title to the land or, if the deed was valid, a lien on Rio's stock equal to her community property interest in the land; (3) remedies for fraud and breach of contract not to revoke the 1983 will; (4) reimbursement of $10,000 insurance proceeds paid on Rio's behalf; and (5) costs and attorney fees. Gemma twice amended her complaint, additionally alleging slander of title and a community property interest in Rio stock registered in Vincent's name.

The defendants denied Gemma's claims and counterclaimed for declaratory judgment that: (1) Rio owns the land; (2) Vincent owns seventy-five percent of Rio's stock, or may recover forty-nine percent of Rio's stock for breach of contract; (3) Vincent and Rio are each entitled to one-half the insurance policies' proceeds; (4) Vincent and Rio are each entitled to one-half the value of Rio funds Vito used for personal expenses, plus a lien on the couple's community property for that amount; (5) Vincent is entitled to the 1979 El Camino vehicle, its reasonable rental value and damages; and (6) defendants are entitled to costs and attorney fees. Gemma denied these counterclaims.

On May 2, 1988, the defendants moved for judgment on the pleadings or partial summary judgment as to Gemma's claims of slander of title, quiet title, fraud, and breach of contract to make or not revoke a will. On June 3, 1988, Gemma moved for summary judgment as to these claims plus the deed's invalidity or Gemma's lien against the land, entitlement to the insurance proceeds, reimbursement of proceeds paid on Rio's behalf, and dismissal of defendants' claims for reimbursement and title to the vehicle. On August 2, 1988, the trial court entered a partial final summary judgment in Gemma's favor as to quiet title to the land, entitlement to insurance policy proceeds, and ownership of the vehicle. The trial court dismissed with prejudice defendants' claims for vehicle ownership and reimbursement. The trial court found genuine issues of material fact existed as to slander of title and Rio's stock ownership, and denied summary judgment on those claims. The defendants appeal the trial court's judgment, which was stayed pending appeal.

ISSUES

On appeal, the defendants claim: (1) the deed was delivered and had consideration; (2) entitlement to the Northern

and Republic policies' proceeds; and (3) the trial court erred by granting partial final summary judgment for Gemma. Defendants abandoned their claim of vehicle ownership, listed in the docketing statement, by failing to brief the issue on appeal. *State v. Doe*, 93 N.M. 621, 623, 603 P.2d 731, 733 (Ct.App.1979). Defendants also claim a right to reimbursement for Rio funds Vito used for personal expenses; however, they cite no authority for this argument as required by SCRA 1986, 12–213. "We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel." *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (citations omitted). We will not review this issue since it was briefed without cited authority. *See id.*

■ Summary judgment is proper as a matter of law when no genuine issues of material fact exist. SCRA 1986, 1–056(C) (Cum.Supp.1989); *Westgate Families v. County Clerk of Inc. County of Los Alamos*, 100 N.M. 146, 148, 667 P.2d 453, 455 (1983). The trial court may enter a final judgment as to less than all claims presented, "only upon an express determination that there is no just reason for delay." SCRA 1986, 1–054(C)(1). The trial court has discretion to determine whether just reason for delay exists and its decision will not be disturbed, absent an abuse of discretion. *Navajo Ref. Co. v. Southern Union Ref. Co.*, 105 N.M. 616, 617, 735 P.2d 533, 534 (1987); *Banquest/First Nat'l Bank v. LMT, Inc.*, 105 N.M. 583, 585, 734 P.2d 1266, 1268 (1987). A trial court abuses its discretion when its decision is contrary to logic and reason. *Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 694, 652 P.2d 240, 244 (1982), *reversed on other grounds, Universal Life Church v. Coxon*, 105 N.M. 57, 59, 728 P.2d 467, 469 (1986); *Newsome v. Farer*, 103 N.M. 415, 420, 708 P.2d 327, 332 (1985). As a matter of policy this court disfavors adjudicative fragmentation of related legal and factual issues, and piecemeal appeals. *Navajo Ref. Co.*, 105 N.M. at 617, 735 P.2d at 534; *Banquest/First*

*Nat'l Bank,* 105 N.M. at 585, 734 P.2d at 1268.

Issues remaining at trial include ownership of Rio's stock, Gemma and Vincent's breach of contract claims, and slander of title. The remaining appellate issues are: (1) delivery of the deed; and (2) ownership of the Northern and Republic policies' proceeds.

## I. *Delivery of the Deed*

■ In our view, genuine issues of material fact exist as to delivery of the deed. The record contains conflicting evidence regarding this issue. There is evidence that Gemma executed the deed to Rio in exchange for Vito's promise to leave her all of his property at his death. The record also indicates that Vito executed the 1983 will to fraudulently induce Gemma to sign the deed. In contrast, there is evidence that the parties orally agreed that Vincent would receive all Rio interests and Gemma would receive all insurance proceeds. There is evidence that Vito gave the deed to Vincent, who was at that time an officer and director of Rio. There is also evidence that Vito physically gave the deed to an attorney and made contemporaneous statements that Gemma no longer had any interest in the real estate, which he claimed belonged to the corporation. A question of fact exists as to whether the deed was delivered.

Gemma further asserts that her execution and delivery of the deed to Vito was part of an agreement that Vito would not revoke his 1983 will, leaving Gemma all of his property. Gemma asserts Vito breached that contract, by revoking his 1983 will and giving the deed to Vincent and his attorney.

We note that the law in New Mexico clearly requires that a contract not to revoke a will: (1) have its material provisions stated in the will, (2) be expressly referred to in the will, or (3) be evidenced in a writing signed by the decedent. NMSA 1978, § 45–2–701(A) (Repl.Pamp.1989); *In re Estate of Vincioni*, 102 N.M. 576, 698 P.2d 446 (Ct.App.), *cert. denied*, 102 N.M. 613, 698 P.2d 886 (1985). Before the al-

leged breach of contract not to revoke a will can be considered, the statutory requirements must be satisfied. Given these facts, summary judgment as to delivery of the deed was improper.

## II. *Ownership of the Insurance Policies' Proceeds*

We also find that genuine issues of material fact exist as to ownership of the insurance policies' proceeds. As stated, the record contains evidence that the parties may have agreed that Gemma would accept the Republic and Northern policies' proceeds, and in exchange, Vincent would own all Rio's stock. The Republic proceeds were paid to Gemma upon Vito's death. This possible agreement, combined with the other appellate issues presented, raises a question of fact which would preclude summary judgment on this issue.

Gemma claims a community property interest in the Northern policies' proceeds, while Vincent claims those proceeds as Vito's named beneficiary. Before ownership of the proceeds can be determined, we must decide whether one spouse may give community property to a third party, without the other spouse's consent. We must also examine spousal management rights concerning community property.

While we find no New Mexico case directly on point, we are persuaded to adopt the rule that payment of life insurance policy premiums with community funds results in a community property interest in policy proceeds. *See Aetna Life Ins. Co. v. Bunt,* 110 Wash.2d 368, 754 P.2d 993 (1988). In New Mexico either spouse alone has the power to manage, control, or dispose of the entire community personal property, unless one spouse is otherwise designated. NMSA 1978, § 40–3–14 (Repl.Pamp.1989). However, the statute alone does not answer the question of whether one spouse alone may give that community property to a third party. This question was examined in *Barela v. Barela,* 95 N.M. 207, 619 P.2d 1251 (Ct.App. 1980). In *Barela* the husband acquired an insurance policy, prior to his marriage, and named his mother as beneficiary. He later

married and then died. His wife claimed a one-half interest in the policy's proceeds as community property, on grounds that community funds paid most of the policy's premiums. The *Barela* court noted that New Mexico law allowed Barela, as manager of community personal property, to dispose of community personal property, both before and after the Community Property Act of 1973 was enacted. *See* NMSA 1978, § 40–3–6 et seq.; NMSA 1978, § 40–3–14(A) or (B)(1). That court concluded that Barela's marriage and the community property law did not invalidate his power to designate his mother as the policy's beneficiary.

Other community property jurisdictions impose a fiduciary duty upon spouses managing community property. The Washington state statute controlling management of community property is similar to New Mexico's, giving either spouse the power to manage and dispose of all personal community property. *See* Wash.Rev.Code § 26.16.030 (1987). In applying its management statute, Washington courts have held that each spouse owes a fiduciary duty to the other in the management of the community assets. *In re Marriage of Matson,* 107 Wash.2d 479, 730 P.2d 668 (1986). Similarly, in *Compton v. Compton,* 101 Idaho 328, 335, 612 P.2d 1175, 1182 (1980), the Idaho court imposed a fiduciary duty upon spouses managing community assets, based on Idaho community property law and the confidential relationship between spouses.

The state of Texas has also concluded that disposal of community property by the husband in violation of the wife's community property interest is a constructive fraud. In *Carnes v. Meador,* 533 S.W.2d 365, 371 (Tex.Ct.App.1975), the Texas court stated,

If a spouse disposes of community property in fraud of the other spouse's rights, the aggrieved spouse has a right of recourse first against the property or estate of the disposing spouse; and, if that proves to be of no avail, then the aggrieved spouse may pursue the proceeds to the extent of her community interest

514

into the hands of the party to whom the funds have been conveyed.

The Texas courts have further observed that a husband may not give his and his wife's interest in community property to a third person to work a fraud upon the wife. A husband's exercise of dominion and control over a community asset, in fraud of the wife's interests, is in effect a gift of the community property to himself. *Martin v. Moran*, 11 Tex.Civ.App. 509, 32 S.W. 904 (1895). "The husband can give *his* interest in the community property to another, but he cannot give his wife's interest to himself." *Id.* at 511, 32 S.W. at 906. (Emphasis added).

It appears to be well-settled in California that when life insurance premiums are paid with community property funds, the resulting policy is a community asset. *Life Ins. Co. of N. Am. v. Cassidy*, 35 Cal.3d 599, 676 P.2d 1050, 200 Cal.Rptr. 28 (1984). The interest of the surviving spouse may not be defeated by a gift of the policy proceeds to a third party beneficiary without the spouse's consent. A spouse who is placed in this position may recover his or her community share in the proceeds. *Id.* at 602, 676 P.2d at 1053, 200 Cal.Rptr. at 31.

 Summarizing the law from other community property jurisdictions, we determine the best rule to be:

(1) each spouse has the power to manage and dispose of the community's personal property;

(2) subject to a fiduciary duty to the other spouse; and

(3) absent intervening equities, a gift of substantial community property to a third person without the other spouse's consent may be revoked and set aside for the benefit of the aggrieved spouse.

In this case, Vito had the power to designate a beneficiary other than his wife pursuant to his management powers. However, he could not exercise that power in violation of his fiduciary duty to Gemma, in fraud of her rights or to give community property to himself. We find that material issues of fact exist which the trial court must determine in light of the law dis-

cussed above. Summary judgment was improper on this issue.

We also find these issues inseparably intertwined with those remaining at trial. The parties' breach of contract claims are inseparable from the ownership claims to the land, Rio's stock, and the insurance proceeds. Resolving these issues separately would conflict with our policy against fragmenting issues and piecemeal appeals. We conclude the trial court had good reason to delay entry of judgment, and it abused its discretion by entering a partial final summary judgment on these issues. Accordingly, we reverse and remand for a trial on the merits.

IT IS SO ORDERED.

SOSA, C.J., and RANSOM, J., concur.