806 P.2d 582

**Manuel A. FERNANDEZ,
Petitioner–Appellant,**

v.

**Mary C. FERNANDEZ,
Respondent–Appellee.**

**No. 10886.**

Court of Appeals of New Mexico.

Jan. 3, 1991.

Kathryn M. Wissel, Levy & Geer, P.A., Albuquerque, for petitioner-appellant.

Martin E. Threet, Threet & King, Albuquerque, for respondent-appellee.

## OPINION

BIVINS, Judge.

Husband appeals the trial court's division of assets and liabilities in this divorce action. He questions the following decisions: (1) the court's determination that a debt incurred during the marriage was a separate debt instead of a community debt; (2) the determination that $14,000 given by wife to the parties' daughters without husband's consent should be excluded from the community estate; and (3) the court's valuation of certain real property. We affirm in part and vacate and remand in part.

## I.  Classification of Debt as Separate Instead of Community

■ Viewed in the light most favorable to the trial court's decision, the following are the facts relevant to this issue. *See Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 697 P.2d 156 (Ct.App.1985) (discussing standard of appellate review for evidentiary matters). Husband is an architect. For some time during the marriage he practiced his profession as a corporation named Fernandez Design Corporation. The parties stipulated that this corporation was community property. From 1984 to August 1986, $80,000 of community funds were pumped into the business in an attempt to keep it solvent. Despite these efforts, the corporation remained in financial difficulty. By August 1986, the corporation owed approximately $62,000 to various creditors, and husband sought to obtain a loan to pay off those debts. All of the debts were corporate debts.

Husband approached wife about the possibility of obligating community assets to secure a loan that would pay off the corporate debts, but wife categorically refused to participate in such a transaction. Wife informed husband that she would not agree to expend any more community funds on the corporation. Husband then obtained assistance from his mother, who co-signed for a $62,000 loan and put up her home as collateral. The mortgage document, signed by husband and his mother on the same date they signed the promissory note, indicates husband is "a married man dealing in his sole and separate property." Wife's signature does not appear on the promissory note or the mortgage, and she did not find out about the loan until after it had been finalized. She then signed, at the lender's request, a quitclaim deed disclaiming all interest in the collateral put up for the loan and an agreement designating that property as husband's separate property.

One month after husband obtained the loan, the corporation ceased operating as a going concern. Husband's "loan" to the corporation has apparently never been repaid. Eight months after the business was shut down, wife and husband separated. At the time of trial, approximately $49,300 of the principal balance of the loan remained unpaid.

Faced with the foregoing facts, the trial court held the consolidation debt was, as between the parties, husband's separate debt and his sole obligation. The court's decision does not purport to decide whether the debt would be considered a community debt as between wife and lender.

Husband maintains the court erred in classifying the debt as separate, because none of the statutory requisites for establishing a separate debt are present in this case. *See* NMSA 1978, § 40–3–9 (Repl. Pamp.1989) (defining separate and community debts). He argues that the only possible provisions that could apply to this case are Subsections 40–3–9(A)(4) and (6), and that neither applies. Subsection (A)(4) requires that a debt be identified in writing to the creditor, at the time it was incurred, as a separate debt. Subsection (A)(6) incorporates NMSA 1978, Section 40–3–10.1 (Repl.Pamp.1989), which allows a court to declare a debt unreasonable, and thus a separate debt, if the parties were separated at the time the debt was incurred and the debt does not benefit the community. *See, e.g., Bustos v. Gilroy*, 106 N.M. 808, 751 P.2d 188 (Ct.App.1988) (interpreting Section

40–3–10.1). Husband also contends the fact that wife refused to participate in the loan is irrelevant, because one spouse may create a community debt without the participation of the other.

We agree that Subsection (A)(6) does not apply to this case, because the parties were not separated at the time the debt was incurred. *See Bustos v. Gilroy* (both provisions of statute must be satisfied before debt may be declared unreasonable). We also agree that, as a general rule, one spouse may incur a community debt even though the other spouse does not participate in the transaction. *See Execu–Systems, Inc. v. Corlis*, 95 N.M. 145, 619 P.2d 821 (1980) (husband can subject the community to certain debts without wife's concurrence). We do not agree, however, with husband's argument that any debt incurred while the parties are still living together is a community debt unless it meets the *exact* requirements of Subsection (A)(4). As we discuss below, at least as between the parties to a divorce, and under certain circumstances, a debt may be classified as separate even if it was incurred while the parties lived together and even though it may not meet the strict requirements of Section 40–3–9(A).

The evidence presented in this case would support a determination that the parties attempted to arrange the loan as a separate debt instead of a community debt. Husband knew wife would not participate in the transaction and that she did not want any community assets included. Therefore, husband obtained assistance from his mother, who put up the collateral for the loan. The mortgage securing the loan explicitly states that husband was a married man dealing in his sole and separate property, and wife testified that the creditor asked her to sign documents disclaiming any interest in the collateral. Although the promissory note contains no statement that the loan is to be considered a separate debt, husband and husband's mother were the only signatories to the note. Under these circumstances, we hold the trial court could find substantial compliance with Subsection (A)(4), at least as between husband and wife. We express no opinion as to whether the mortgage's identification of husband as dealing in his sole and separate property, coupled with the creditor's apparent knowledge that wife did not wish to participate in the loan, would be sufficient to satisfy the statute as between wife and creditor.

In apportioning a husband and wife's assets and liabilities, the trial court must attempt to perform an allocation that is fair under all the circumstances. NMSA 1978, § 40–4–7(B)(4) (Repl.Pamp.1989) (court may make such an order regarding control of the property of the parties as may seem just and proper); *Bustos v. Gilroy* (proper apportionment of community property and debts depends on what is fair considering all the facts and circumstances of the case). The court's power to apportion assets in an equitable manner should also include the ability to give effect to the parties' intentions, whether or not the parties strictly comply with the community property or debt statutes.

The main purpose of Subsection (A)(4), requiring written notice to the creditor, is to protect creditors who might be unaware the spouses do not intend to create a community debt. As between the spouses, however, it is not as necessary to require strict compliance with the statute. Where, as here, there is evidence the spouses do not intend the debt to be community and take steps to ensure it is not, a court may find this substantial compliance sufficient to declare the debt separate as between the spouses.

■ There is an additional reason which supports affirmance of the trial court's finding. Each spouse owes the other a fiduciary duty when managing community property. *See Roselli v. Rio Communities Serv. Station, Inc.*, 109 N.M. 509, 787 P.2d 428 (1990). This fiduciary duty limits a spouse's ability to enter into any transaction in which he or she might wish to engage, without fear of subsequent liability to the other spouse. In particular, at least between the spouses, debts incurred in violation of the fiduciary duty can be determined the sole responsibility of the

spouse incurring the debt. *Cf.* W. de Funiak & M. Vaughn, *Principles of Community Property,* § 161 (2d ed. 1971) (one spouse's share in common property should never be subjected to liability for any debt incurred by the other spouse in violation of the fiduciary duty owed by the latter; spouse cannot wrongfully or negligently enter into a contract or engage in dealings which risk the substance of the other spouse without prospect of gain; if creditor is allowed access to community property, the injured spouse should be entitled to redress from the other spouse's property).

As outlined above, the evidence in this case showed the community had already contributed $80,000 to the corporation before husband incurred the debt in question. The debts of the corporation were more than six times the value of its assets, according to the parties' stipulated value for the corporate assets. There was no doubt in wife's mind that the proposed loan was not fiscally prudent, and she expressly refused to participate in the transaction. Despite wife's refusal to participate, husband entered into the transaction without wife's knowledge so that, if his argument that the debt is a community obligation is accepted, he would have in effect converted a corporate debt, for which the community was not liable, into a community debt. Finally, instead of using the loan to keep the corporation operating, which might have brought some financial benefit to the community or at least allowed some of the debt to be repaid, husband terminated the operations of the corporation one month after obtaining the loan. The foregoing evidence provides ample support for a finding that husband breached his fiduciary duty toward wife. In particular, we emphasize husband's failure to inform wife he was proceeding with the transaction, and the fact that his actions were directly contrary to her reasonable desires. *Cf. Covalt v. High,* 100 N.M. 700, 675 P.2d 999 (Ct.App.1983) (partners in partnership have fiduciary relationship toward each other, which means they have duty to fully disclose to the other all material facts that may affect partnership's business); W. de Funiak, *supra,* § 95 (relationship of husband and wife re-

garding community property is in many ways similar to that of partners in partnership). The other facts discussed above lend additional support to our conclusion that husband's actions were not taken to further the common benefit of both members of the community. *Cf. Covalt v. High* (partners have duty to act in furtherance of the common benefit of all partners).

In affirming the trial court on this issue, we bear in mind husband's argument that the legislature has explicitly provided statutory means by which debts may be determined separate, and that we should not expand those means. We view Section 40–3–9(A), however, as directed mainly toward relations between couples and their creditors. We do not believe the legislature intended to restrict the courts' ability to practice fairness as between two spouses. If husband's argument were accepted, any spouse would be free to incur the most outlandish debt, over the objections of his or her spouse, and avoid sole responsibility for that debt, as long as the parties were living together at the time the debt was incurred. Such a result would vitiate the fiduciary responsibilities owed by each spouse toward the other. *See Roselli v. Rio Communities Serv. Station, Inc.*

We also recognize that a different result might be required if, notwithstanding one spouse's objection to a loan obtained to pay off corporate debts, such a loan could be found reasonably necessary to protect community assets or to protect the parties against personal liability. Because it was suggested by counsel for husband at oral argument that the consolidation loan was necessary to protect the community estate or the parties from personal liability, we requested counsel for both sides to supplement their briefs with a letter pointing to evidence in the record that would establish this theory. Although husband calls our attention to testimony that he provided two creditors of the corporation a personal financial statement, we fail to see how this fact alone would involve the community or the parties personally.

We also note husband's argument that wife is having the best of both worlds in

this case. The parties stipulated that the corporation's assets were community property. Husband's loan protects those assets from corporate creditors, which benefits the community. Yet wife does not wish to bear the concomitant burden of the debt that protects those assets. This argument has some merit. If husband had requested that the trial court offset the separate debt by the amount of the community assets the debt protects, in effect giving husband a lien on the community assets, we would have been sympathetic to such a claim. However, husband made no such request— he simply stipulated that the assets be included in the community estate. We can find no indication that husband pointed out the asserted unfairness to the trial court. Standing alone, we do not believe the fact that wife stipulated to the inclusion of $9,000 worth of corporate assets in the community estate negates her claim that the $62,000 debt incurred by husband should be a separate debt. It is simply contrary evidence the trial court could have considered in reaching the result it did.

Based on the foregoing, we affirm the court's determination that the debt in question is a separate debt instead of a community obligation.

## II. *Gift of $14,000 to Daughters*

■ Immediately prior to the parties' separation, wife withdrew a substantial amount of community funds from the couple's joint account and had husband's name removed from the joint account. With some of the money, wife opened joint accounts for herself and the couple's two daughters, depositing approximately $7,000 into each account. Wife testified these amounts were gifts to the daughters and that she claimed no interest in the accounts.

The trial court rejected requested findings of fact submitted by husband that wife, in making these withdrawals, did not have the present intention to make a gift; that she did not complete the delivery; and that it is reasonable to infer that the transfers were made in contemplation of divorce and were with the intent of depriving hus-

band of his interest in community funds. The trial court found that the accounts so established were valid gifts to the children by both parties and did not constitute a portion of the community property. At the time this case was decided, the trial court did not have the benefit of the supreme court's decision in *Roselli*. Summarizing its discussion of the law from other community property jurisdictions, our supreme court laid down the following rule:

(1) each spouse has the power to manage and dispose of the community's personal property;

(2) subject to a fiduciary duty to the other spouse; and

(3) absent intervening equities, a gift of substantial community property to a third person without the other spouse's consent may be revoked and set aside for the benefit of the aggrieved spouse.

*Id.* 109 N.M. at 514, 787 P.2d at 433.

If such a gift occurs, absent intervening equities, the aggrieved spouse may have the gift set aside. *Id.* In the alternative, it would seem reasonable to allow the spouse the option of recouping his or her community share of the gift from the spouse who made the gift. *See Carnes v. Meador*, 533 S.W.2d 365 (Tex.Civ.App.1975) (if one spouse disposes of property in fraud of the other spouse's rights, the aggrieved spouse may have recourse first against the other spouse's property, and then against the donee of the property).

It is undisputed that husband consented to neither the removal of the funds from the joint account nor to the gift of the funds to the daughters. Wife did testify that she spoke to husband in November, three or four months before taking her actions regarding the accounts, and that he "was aware" of her plans. This is not sufficient to support a finding that husband consented to the gifts. Prior discussions of gifts to parties' children while the marriage is stable do not constitute a consent or mutual agreement to make transfers on the eve of separation where divorce is imminent.

■ Because husband did not consent to wife's attempted gifts of $14,000 of com-

munity property, he should be able to recover his share of the gifts from wife's property. *See Roselli v. Rio Communities Serv. Station, Inc.* The appropriate means of effecting that result would be to reverse and remand with instructions to include the $14,000 in a pool of community assets and then redivide those assets, assigning the gifts to wife's share of the property. However, the supreme court in *Roselli* spoke in terms of "a gift of *substantial community property* to a third person without the other spouse's consent." *Id.*, 109 N.M. at 514, 787 P.2d at 433 (emphasis added). Does $14,000 constitute a substantial portion of the community property? We know that the parties' community assets in this case amounted to almost $600,000; however, the accessible cash reserves of the community at the time the gifts were made was relatively small, so that the $14,000 may have constituted a sizeable portion of those reserves. Since the trial court did not have the benefit of the principles laid down in *Roselli* and did not make a specific finding as to whether or not the $14,000 was substantial, we deem it appropriate to remand for further findings on the issue of these attempted gifts. *See Scott v. Jordan*, 99 N.M. 567, 661 P.2d 59 (Ct.App. 1983) (appellate court cannot make findings of its own).

### III. *Valuation of Real Estate Equity*

■ Husband complains of the trial court's valuation of the community's equity in a certain piece of real estate owned in partnership with other persons. The parties' estimates of the community's equity varied widely. Husband testified the equity was about $3,500, while wife testified it approximated $46,000. The trial court adopted wife's proposed finding of fact valuing the equity at $42,500 and assigned the property to husband as part of the allocation of community assets. Husband complains substantial evidence did not support the court's valuation of the property. Alternatively, husband maintains the court should have assigned the property to wife, since the court adopted her valuation and the estimates of the value varied so greatly.

Husband cited no authority, and we have found none, for the proposition that if a court adopts one spouse's valuation of a disputed asset the asset should be awarded to that spouse. *See In re Adoption of Doe*, 100 N.M. 764, 676 P.2d 1329 (1984) (issues not supported by cited authority will not be considered on appeal). In any event, we are not convinced by husband's arguments in favor of such a rule and decline to adopt it at this point.

We also reject husband's contention that the court's valuation figure was not supported by substantial evidence. Wife testified the community owned 5% of 191.32 acres, or just over 9.55 acres. The parties agreed the land was worth approximately $5,500 per acre. The total value of the community interest in the land, therefore, was a little more than $52,525 ($5,500 times 9.55 acres). Wife testified that the balance owed on the land was $9,000, leaving an equity of somewhat more than $43,525, or only $1,000 more than the amount the court found as the equity. Since the figures testified to by the parties were estimates, the court's valuation was substantially in conformance with the parties' testimony. Although husband vigorously disagrees with wife's testimony concerning the balance owed on the property, the court was free to accept wife's figures instead of husband's.

Neither party presented any documentary evidence regarding the balance owed on the property. Although husband concedes the lack of documentary evidence as to the encumbrance against the property, he does direct our attention to Exhibit 8, a personal financial statement which shows the property having a market value of $26,000 and a mortgage of $19,000 as of August 6, 1986. Since that statement was prepared almost two years before the trial and the market value of the property is approximately one-half the agreed value at trial, the trial court was not bound to accept the mortgage balance as contained in the two-year-old financial statement over the parties' figures given at trial.

Therefore, the disagreement about the value was a swearing match between hus-

**448**

band and wife, and the court chose to believe wife. *See Naranjo v. Paull,* 111 N.M. 165, 803 P.2d 254 (Ct.App.1990). We will not disturb that credibility determination on appeal. *See Lewis v. Bloom,* 96 N.M. 63, 628 P.2d 308 (1981) (only trier of facts may weigh evidence and determine credibility of witnesses).

Conclusion

Pursuant to the foregoing discussion, we affirm the determinations that the debt incurred by husband was a separate debt and that the value of the community's equity in the disputed property was $42,500. We vacate the exclusion of $14,000 in gifts from the community assets and remand for further findings in light of *Roselli.* Since the district court judge who tried this case has since left the state court bench, we leave to the new judge's discretion whether to rely only on the evidence heretofore introduced or to take new evidence and allow additional requested findings of fact and conclusions of law. *See Smith v. Trailways, Inc.,* 103 N.M. 741, 713 P.2d 557 (Ct.App.1986).

IT IS SO ORDERED.

ALARID, C.J., and CHAVEZ, J., concur.