707 P.2d 1171

Bea FOULDS, Judy Foulds, Linda Coleman, Bruce Livinston and Katherine Coyle, Plaintiffs-Appellants,

v.

FIRST NATIONAL BANK, a National Banking corporation, formerly First National Bank of Lea County, Defendant-Third Party Plaintiff-in-Interpleader-Appellee,

v.

Leta IRVIN and Genevieve Cooper, Co-Personal Representatives of the Estate of Zettie Hazel Lamar, Third Party Defendants-in-Interpleader-Appellees.

No. 15577.

Supreme Court of New Mexico.

Oct. 23, 1985.

Templeman & Crutchfield, C. Barry Crutchfield, Lovington, for plaintiffs-appellants.

Gary Don Reagan, Hobbs, for defendant-third party plaintiff-in-interpleader-appellee.

Maddox & Renfrow, James P. Saunders, Jr., Scotty Holloman, Hobbs, for third party defendants-in-interpleader-appellees.

## OPINION

SOSA, Senior Justice.

Plaintiffs brought this action seeking to order defendant First National Bank (FNB) to pay them the proceeds of Certificates of Deposit (CD's) established by Zettie Hazel Lamar, deceased, which named plaintiffs as beneficiaries Payable on Death (P.O.D. Payees). The co-personal representatives of the estate of Zettie Lamar, third party defendants in interpleader, claimed the CD's on the basis of a prior contractual will between Zettie Lamar and her late husband, Perry Moore Lamar.

The trial court decided in favor of the estate, and plaintiffs appeal. We affirm.

Submitted to this court as a matter of first impression, the issue is whether a valid contractual will prevails over a subsequent designation of P.O.D. payees. We hold that it does.

## Facts

The trial court found that:

On June 2, 1975, decedent Zettie Hazel Lamar and her husband, Perry Moore Lamar, entered into a contract for the disposition of their property and executed, pursuant to such contract, their joint and mutual Last Will and Testament, which has been admitted to probate by the District Court of Lea County, New Mexico in cause number PB–83–100.

By their Last Will and Testament, Mr. and Mrs. Lamar contracted with respect to the disposal of all of their property following the death of the last survivor of them; and they named the Third Party Defendants as the Co-Personal Representatives and sole beneficiaries under their contractual Last Will and Testament.

The aforesaid Last Will and Testament of June 2, 1975 was not changed or varied by either Mr. or Mrs. Lamar prior to their respective deaths.

Mr. Lamar died January 12, 1982, at the age of 83 years, a resident of Hobbs, Lea County, New Mexico without either Mr. or Mrs. Lamar having revoked the Will dated June 2, 1975.

After Mr. Lamar died, Mrs. Lamar retained all the assets of the community property. These included a car, a mobile home and furnishings, miscellaneous personal property, and several bank accounts. She was advised that she could assume possession as survivor without probate of the will or administration of the estate. Gradually she liquidated almost all the personal property, ultimately transferring the funds to the CD's issued by FNB in February and March 1983. In April, 1983, Mrs. Lamar rescinded prior P.O.D. beneficiary designations and named Plaintiffs as P.O.D. payees. At the time of her death, July 3, 1983, these CD's represented some 95% of her assets.

Plaintiff-Appellants challenge the final finding of the trial court that the CD's were assets of the estate at the time of Mrs. Lamar's death. They argue instead that certificates of deposit with P.O.D. designations have been excluded from the estate by the operation of the Probate Code. NMSA 1978, §§ 45–6–101 to –201. We agree that this portion of the Probate Code regulating Multiple–Party Accounts was intended to remove from the probate process transfers within such accounts. If the funds in question were not otherwise restricted, they would pass to the P.O.D. payees directly and the estate would have no claim to them.

However, the Probate Code must be read in its entirety and full effect given to all its provisions. Those provisions in turn must be supplemented by the principles of law and equity. NMSA 1978, § 45–1–103.

The Probate Code expressly recognizes the validity of contractual wills. NMSA 1978, § 45–2–701. [The Code became effective July 1, 1976.] However, "the mere making of joint or mutual wills is not sufficient evidence of a contract to devise or bequeath property or a contract not to revoke a will.[1]" *In re Estate of Joe Vincioni*, 102 N.M. 576, 698 P.2d 446 (Ct. App.1985). The contractual will in this case was found to be valid by the trial court; such finding is uncontested. Once a party to such a will dies, it becomes irrevocable. A contractual will is binding on a survivor when the survivor accepts the benefits provided thereunder. *Brown v. Brown*, 53 N.M. 379, 208 P.2d 1081 (1949).

---

**1.** "A 'joint will' is a single testamentary instrument which is jointly executed by two or more persons intending it to constitute their respective wills. *Salley v. Burns,* 220 Va. 123, 255 S.E.2d 512 (1979). 'Mutual wills' are defined as wills executed pursuant to an agreement between testators to dispose of their property in a particular manner, each in consideration of the other. *Persson v. Dukes,* 280 Md. 194, 372 A.2d 240 (1977). 'Reciprocal wills' are those in which two or more testators make testamentary dispositions in favor of each other. Reciprocal wills may be contained in one instrument in which case the will is both joint and reciprocal or they may be done by separate wills. *See In re Will of McDowell,* 81 N.M. 562, 469 P.2d 711 (1970); *see also Father Flanagan's Boys' Home v. Turpin,* 106 N.W.2d 637 (Iowa 1960)."
*Vincioni* at 262.

Equity will enforce such a contract by specific performance. *Schauer v. Schauer,* 43 N.M. 209, 89 P.2d 521 (1939).

 Plaintiffs, however, cite *Schauer* for the proposition that the survivor of a contractual will is not restrained from alienating or disposing of the property so inherited. What the case holds, like others cited by plaintiffs, is that the survivor in the joint will situation has an interest analogous to a life estate. The survivor may freely use the estate and may convert it from one form to another. What the survivor may not do is defeat the contractual agreement. Whether by gift, will, or creation of a P.O.D. account, the survivor may not convey what he/she had previously promised to dispose of by joint will. The survivor's subsequent intent is irrelevant.

The Probate Code section cited by plaintiffs regarding right of survivorship to multiple party accounts states that:

A. Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent *unless there is clear and convincing evidence of a different intention at the time the account is created.*

NMSA 1978, § 45–6–104 (emphasis added).

In this case the contrary intention is found in the terms of the contractual will, by which the decedent was bound. Thus the P.O.D. designations are without effect, since the decedent attempted to circumvent her will by creating them.

Plaintiffs raise a second point—that Zettie Lamar had full authority to establish the P.O.D. accounts because the funds she used came from joint accounts rather than from the operation of her late husband's will. We note that this factual conclusion is not supported by the record. Even if it were, moreover, the terms of the joint will provide for the distribution of all the assets of the survivor's estate, irrespective of their source.

We hold that a valid contractual will cannot be defeated by the survivor's creation of P.O.D. accounts. The judgment of the trial court is affirmed.

IT IS SO ORDERED.

RIORDAN and STOWERS, JJ., concur.