2000-NMCA-008

995 P.2d 487

**In the Matter of the ESTATE OF Roberto L. ARMIJO, Deceased.**

No. 19,594.

Court of Appeals of New Mexico.

Nov. 8, 1999.

Certiorari Granted, No. 26,124, Jan. 31, 2000.

Danelle J. Smith, Smith & Flores, Las Vegas, Clara Ann Bowler, Albuquerque, for Appellee.

Michael L. Gregory, Las Vegas, for Appellants.

## OPINION

APODACA, Judge.

{1} Four of the children (Contestants) of Roberto L. Armijo (Decedent) appeal the trial court's determination that the will signed by Decedent jointly with Contestants' stepmother (Stepmother) was not a contract to make a will. Contestants also appeal the trial court's denial of their motions or requests, arguing that the trial court erred in (1) not allowing a factual determination of property included under certain paragraphs of the will, (2) ruling that Stepmother could sell certain property, (3) ruling before completion of discovery, and (4) denying Contestants' demand for a jury trial. We hold that the language of the will is ambiguous and that additional discovery to determine Decedent's intent concerning the disposition of Decedent's property under various provisions of the will is thus permissible. We also conclude that, considering only the express provisions contained within the four corners of the will itself, Contestants failed in their burden of proving that a contract to make a will existed. However, because discovery may also uncover extrinsic documentary evidence concerning the issue of whether a contract to make a will exists outside the four corners of Decedent's will, the trial court, on remand, should consider such evidence to determine whether such a contract to make a will exists. We reverse and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Decedent and Stepmother were married in 1978. Each had children from a prior marriage, but they had no children together. They executed a joint will in 1982. Decedent died in October 1997 and the joint will was admitted to probate the following month. Stepmother was appointed personal representative. The pertinent provisions of the will stated:

### II

We hereby give and bequeath to the survivor of us all of the rest, residue and remainder of our property, be it real, personal or mixed and of whatever class and character and wherever situate, to become the property of the survivor absolutely....

### III

Should we die simultaneously or as a result of a common disaster, or upon the death of the survivor, then we give, devise and bequeath to our respective children all property acquired by either of us prior to our marriage, June 16, 1978, notwithstanding the manner in which property is held, and as to such property as we may have acquired thereafter, including the value of improvements to real estate, it is our wish that the same be divided equally between

the two groups of children and by them divided among themselves equally per capita, and to their heirs absolutely.

. . . .

## VIII

We agree that the provisions hereof shall not be changed except by our mutual consent.

## II. DISCUSSION

### A. Preliminary Matter—Parties to This Appeal

{3} We first address Stepmother's initial argument concerning her request that this Court adjudicate certain matters. She claims that three of Decedent's children have not joined in this appeal, although they had the opportunity to do so. She also contends "that [one of them] was identified as a person in attendance at the telephonic mediation by this Court's mediation service." She requests determination by this Court that these three individuals "have waived their right to litigate the issue of the alleged contractual will in the future." We decline to do so. Stepmother does not state how this question was preserved below. *See* Rule 12–216(A) NMRA 1999. Nor does she cite any authority for the proposition that these children have waived their rights to litigate this matter. *See Wilburn v. Stewart,* 110 N.M. 268, 272, 794 P.2d 1197, 1201 (1990) ("Issues raised in appellate briefs that are unsupported by cited authority will not be reviewed . . . on appeal."). Contestants express concern that all of Decedent's children are not parties to the present action but seek no affirmative relief from this Court. It is premature for us to speculate what effect, if any, the present litigation might have on issues that may later be litigated by any person who is not a party to this appeal.

### B. Contract to Make a Will

{4} We first address whether Decedent's will was itself a contract to make a will for the benefit of the children. We believe this question is controlled by the provisions of the Uniform Probate Code, NMSA 1978, §§ 45–1–101 to –8–9 (1975, as amended through 1998) that were in effect when the will was executed. *See* § 45–2–701 (1975). The Uniform Probate Code became effective July 1, 1976. *See In re Estate of Kerr,* 1996–NMCA–063, ¶ 8, 121 N.M. 854, 918 P.2d 1354. Section 45–2–701 thus controls our interpretation of Decedent's will, which was executed in November 1982.

{5} The construction of a statute is a matter of law that we review de novo. *See Morgan Keegan Mortgage Co. v. Candelaria,* 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066 (stating standard of review). Although we accord deferential review to facts found by the trial court, *see Strata Prod. Co. v. Mercury Exploration Co.,* 1996–NMSC–016, 121 N.M. 622, 627, 916 P.2d 822, 827, here the relevant facts are not in dispute. There is no disagreement that the will admitted to probate is Decedent's will and no controversy over what it states. What the parties strongly dispute is the legal significance of the words used in the will. In reviewing this dispute, this Court is as able to determine that significance as well as the trial court. *See Kirkpatrick v. Introspect Healthcare Corp.,* 114 N.M. 706, 711, 845 P.2d 800, 805 (1992) ("When the resolution of the issue depends upon the interpretation of documentary evidence, [an appellate court] is in as good a position as the trial court to interpret the evidence."). We therefore review the trial court's determination under a de novo standard of review.

{6} The will was executed when the requirements of Section 45–2–701 for upholding a contract to make a will were in effect.

Section 45–2–701 (1975) provides:

A. A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after the effective date of this Act [the Probate Code], can be established only by:

(1) provisions of a will stating material provisions of the contract;

(2) an express reference in a will to a contract; or

(3) a writing signed by the decedent evidencing the contract.

B. The execution of a joint will or contemporaneously executed wills does not create a presumption of a contract not to revoke the will or wills, unless otherwise expressed in both the joint will or the contemporaneously executed wills.

We interpreted this statute in *In re Estate of Vincioni*, 102 N.M. 576, 698 P.2d 446 (Ct. App.1985). *Vincioni* observed that the New Mexico Legislature had omitted from subsection (A)(2) a provision found in the Uniform Probate Code that allowed "extrinsic evidence prov[ing] the terms of the contract" when there was "an express reference in a will to a contract." 102 N.M. at 580–81, 698 P.2d at 450–51; *cf.* NMSA 1978, § 45–2–514 (1993) (revision and recodification of Section 45–2–701, adding language previously omitted but enacted *after* the operative facts of this case). The Court noted "that a contract to make a will must be clearly established and be certain and unambiguous." *Vincioni*, 102 N.M. at 581, 698 P.2d at 451. Additionally, the Court stated that "[t]he differences in the language of the New Mexico statute and the language of the Uniform Act reveal an intention on the part of our legislature to prevent the use of oral testimony to establish the existence" of a contract to make a will. *Id.* The Court, however, stressed that the difference in the language "only operates to exclude extrinsic oral evidence for proof of essential terms of the contract," not extrinsic documentary evidence. *Id.* at 582, 698 P.2d at 452. Contractual intent of the testators may be established by producing evidence "contained in more than one document." *Id.* We therefore conclude that Contestants must prove "by clear, satisfactory, and convincing evidence," either by the language contained in the will itself or by extrinsic documentary evidence, that the intent of the testators was to enter into a contract to make a will. *See id.* ("Any agreement limiting or restricting the right to revoke or modify a will must be proven by clear, satisfactory, and convincing evidence."). Thus, we first must examine the language contained in the will.

■ {7} We initially consider the meaning of the devise in Paragraph II of all Decedent's property to Stepmother "absolutely." We look to the dictionary to define words as they are commonly understood.

*See State v. Ortega*, 112 N.M. 554, 570, 817 P.2d 1196, 1212 (1991) (using *Webster's Third New International Dictionary* to define "service" as used in the kidnaping statute then in effect). Among the definitions listed for "absolute" is "marked by freedom from restraint or control by any governing or commanding agent or instrumentality." *Webster's Third New International Dictionary* 6 (1993). We hold that, when Stepmother took under the bequest in Paragraph II pursuant to the language "to become the property of [Stepmother] absolutely," she inherited the property free "from restraint or control by any ... instrumentality," including other provisions of the will itself. We believe that a bequest under those specific terms negates the existence of a contract to make a will for the benefit of the children. *See In re Estate of Di Siena*, 178 A.D.2d 720, 576 N.Y.S.2d 952, 953 (1991) ("[W]here the language of the joint instrument creates an absolute grant to the survivor, no contract will be found in the absence of qualifying language unmistakably demonstrating 'a clear intention to make the will contractually binding.'" (citations omitted)).

■ {8} We find no language in the remainder of the will clearly demonstrating the parties' intention to qualify the absolute nature of the devise to the survivor under Paragraph II. Contestants maintain that Paragraph III devises certain property to specified beneficiaries after the death of the survivor, which in this case was Stepmother. On its face, considered together with the absolute character of the devise to Stepmother under Paragraph II, Paragraph III at the least does not evince, clearly and convincingly, the mutual intention to be bound to a different disposition that is essential to a contract to make a will. *See Vincioni*, 102 N.M. at 583, 698 P.2d at 453 (holding that certain documents did not constitute a contract to make a will because "[t]he parties did not evidence in writing an intent to be mutually bound to make a particular disposition"). At the very most, Paragraph III indicates an inconsistency or ambiguity when compared to Paragraph II. But Contestants had the burden of persuasion by clear and convincing evidence. Merely demonstrating

an ambiguity does not satisfy Contestants' burden.

{9} Contestants next claim that Paragraph VIII of the will, stating "We agree that the provisions hereof shall not be changed except by our mutual consent," clearly establishes the parties' mutual intent to create a contract to make a will. Considering Paragraph VIII in tandem with the absolute nature of the title to be held by the survivor, however, we believe Paragraph VIII can be properly read to prohibit either party's revocation of the will during the time both testators lived. This reading of the two provisions considered together is to promote harmony between the spouses while both of them live. Additionally, this reading does not on its face limit the absolute quality of the devise in Paragraph II in the event one of the testators predeceases the other and does not "die simultaneously or as a result of a common disaster," as provided in Paragraph III.

{10} If we were to agree with Contestants' argument and assume that Paragraph VIII demonstrated mutual intent, intent alone is insufficient to create a contractual will, especially in light of the absolute devise found in Paragraph II. A contract to make a will must be clear and unambiguous in all its terms. *See Vincioni,* 102 N.M. at 582, 698 P.2d at 452; *McDonald v. Polansky,* 48 N.M. 518, 528, 153 P.2d 670, 675 (1944) (" 'A contract to make a will must, in order to be enforceable, be clearly proved and be certain and unambiguous in all its terms.'" (quoting 4 *Page on Wills* § 1711 (Lifetime ed.))). A provision that would prevent Stepmother from changing the terms of the will after Decedent's death is inconsistent with the absolute devise to Stepmother. Contestants themselves recognize the inconsistency and the ambiguity in the will. We determine that this inconsistency is fatal to Contestants' claim that the will itself was contractual under its express terms.

{11} Having so determined, however, we next consider if Contestants could have presented any extrinsic documentary evidence to show the contractual nature of the will. We have previously noted that such evidence is permissible under *Vincioni.* Contestants argue that the trial court erred in ruling before discovery was complete. Because we remand this case for additional discovery to resolve other issues presented in this appeal, our holding does not preclude further consideration by the trial court of whether extrinsic documentary evidence exists proving a contract to make a will. If, after such discovery, the trial court determines that there exists extrinsic documentary evidence proving a contract to make a will, the trial court may reconsider its ruling on that issue.

## C. Ambiguity of the Will

{12} Although we have concluded that the ambiguity of the language used in the will precludes its establishing a contract to make a will, we nonetheless hold that this same ambiguity permits extrinsic oral or documentary evidence to determine Decedent's intent. *See New Mexico Boys Ranch, Inc. v. Hanvey,* 97 N.M. 771, 773, 643 P.2d 857, 859 (1982) (stating that a court's primary consideration is the testator's intent); *see also Portales Nat'l Bank v. Bellin,* 98 N.M. 113, 118, 645 P.2d 986, 991 (Ct.App.1982) ("[M]atters extrinsic to the four corners of the will are properly admissible only where the will on its face is ambiguous."). We determine that the use in Paragraph II of "our property" and the use in Paragraph III of "all property acquired by either of us prior to our marriage" together create ambiguity.

{13} It is apparent to us that, when the trial court considered whether the express provisions of the will created a contract to make a will and determined that they did not, the court did not go beyond that issue to then consider the ambiguity of the provisions in the disposition of property. This issue is separate and apart from the question whether the express terms of the will clearly and convincingly proved the existence of a contract to make a will, which the trial court resolved against Contestants. When attempting to determine what a testator intended under language found to be ambiguous, a trial court may examine extrinsic evidence. *See Moore v. Bean,* 82 N.M. 189, 193, 477 P.2d 823, 827 (1970) (noting that trial court resolved uncertainty in the testa-

tor's intent from the extrinsic evidence). We conclude that the trial court erred in determining that the issue of whether a contract to make a will existed and the issue of ambiguity concerning disposition of the property under the will were one and the same.

{14} In summary, we conclude that the ambiguous terms of Decedent's will, as they relate to the disposition of property intended by Decedent, permit additional extrinsic evidence, both oral and documentary, to assist the trial court in determining Decedent's intent.

### D. Stepmother's Motion to Sell Certain Property

{15} As personal representative, Stepmother moved the trial court for permission to sell a particular piece of real property, known by the parties as the Gallinas land, to a third party. Contestants requested that the motion be denied and in the alternative that Stepmother be ordered to sell the property to them on the same terms as she had agreed upon with the third party. The trial court granted Stepmother's motion. Based on our holding on the question of ambiguity, we conclude that the trial court's order granting Stepmother's motion was premature and thus error. The trial court was required to resolve the ambiguity before considering Stepmother's motion. On remand, the trial court's ruling concerning Stepmother's motion will depend on the court's resolution of the will's ambiguity.

### E. Jury Trial

{16} Contestants contend that the trial court erred in denying their request for a jury trial. If additional discovery on remand presents evidence that would assist in determining the testator's intent, Contestants are entitled to a trial by jury on those factual issues. *See In re Will of Ferrill,* 97 N.M. 383, 389–90, 640 P.2d 489, 495–96 (Ct. App.1981) (discussing the right to a trial by jury). *Ferrill* held that, "[i]f demanded ... a party is entitled to a trial by jury in a formal testacy proceeding ... in which any controverted question of fact arises as to which any party has a constitutional right to trial by jury." *Id.* at 390, 640 P.2d at 496. The ambiguity of the will's provisions in this appeal has placed Decedent's intent at issue. We thus hold that Contestants have a right to a trial by jury on any factual issues developed after further discovery.

### III. CONCLUSION

{17} We conclude that Contestants did not meet their burden of showing existence of a contract to make a will under the express provisions of the will by clear, convincing, and satisfactory evidence. We conclude, however, that an ambiguity exists concerning the disposition of property under the will requiring the trial court to resolve that ambiguity and determine Decedent's intent. For this reason, we hold that the trial court erred in denying Contestants' requests to (1) allow further discovery, (2) admit extrinsic evidence, (3) prevent Stepmother from selling the Gallinas land, and (4) allow a jury trial. On remand, the trial court shall consider any extrinsic documentary evidence presented by Contestants in connection with any renewed argument that a contract to make a will has been proven by clear and convincing evidence. We therefore reverse the trial court and remand for proceedings consistent with this opinion. The parties shall bear their respective costs on appeal.

{18} **IT IS SO ORDERED.**

BOSSON and WECHSLER, JJ., concur.