2001-NMSC-027

31 P.3d 372

In the Matter of the ESTATE
OF Roberto L. ARMIJO.

Anita M. Naranjo, Dolores E. Saulsberry,
n/k/a Adea Armijo, Thomas C. Armijo,
and Paul D. Armijo, Respondents,

v.

Irene W. Armijo, personal representative,
Petitioner.

No. 26,124.

Supreme Court of New Mexico.

Sept. 4, 2001.

Smith & Flores, Danelle J. Smith, Las Vegas, NM, Clara Ann Bowler, Albuquerque, NM, for Petitioner.

Michael L. Gregory, Las Vegas, NM, for Respondents.

## OPINION

MAES, Justice.

{1} This will contest is before us on certiorari from the Court of Appeals to determine whether husband and wife created a contractual will in favor of decedent husband's children and detracting from the interest of the surviving spouse. Although the Court of Appeals found that there was not a contract to make a will, it nonetheless concluded that there were ambiguities in the will which would not only permit discovery as to the parties' intent in their devises and bequests, but also to determine if there exists extrinsic documentation that would demonstrate that the parties intended a contract to make a will. *In re Estate of Armijo*, 2000–NMCA–008, ¶¶ 14, 17, 128 N.M. 565, 995 P.2d 487, *cert. granted*, No. 26,124, 128 N.M. 690, 997 P.2d 822 (2000). In addition, the Court of Appeals allowed for a jury trial for the resolution of the ambiguity it found. *See Thorp v. Cash (In re Will of Ferrill)*, 97 N.M. 383, 390, 640 P.2d 489, 496 (Ct.App.1981) ("If demanded ... a party is entitled to a trial by jury in a formal testacy proceeding and in any proceeding in which any controverted question of fact arises as to which any party has a constitutional right to trial by jury." (quoting NMSA 1978, § 45–1–306 (1975))). We affirm the judgment of the Court of Appeals that no contract to make a will exists, but because we find no ambiguity in the will, we reverse as to 1) allowing further discovery, 2) the admission of extrinsic evidence, 3) allowing a jury trial, and 4) the right of the surviving spouse to sell certain land under the will.

*FACTS AND ISSUES*

{2} The facts which form the background of this case are not in dispute. Petitioner is the survivor and primary beneficiary under the will of her deceased husband, Roberto L. Armijo. They were married in 1978 and executed a joint will in 1982. Each had

children from a previous marriage. Decedent died in October 1997 and the will was admitted to probate the following month. Petitioner was appointed personal representative at the same time. Some of the decedent's children (hereinafter "Contestants") petitioned for supervised administration, stating they were "entitled to share in the ultimate distribution of the joint estates" of Petitioner and the decedent. In addition, they claimed that they were "entitled to receive one-half of the total combined estate."

{3} Petitioner filed a Motion for Determination of the Effect of the Last Will and Testament, proceeding under NMSA 1978, § 45–3–505(B) (1975), asserting that the "clear and unambiguous terms of the Last Will and Testament give [Petitioner] 'absolute' ownership of the estate property." Petitioner also sought the court's permission to sell a portion of the estate's real property. Contestants argued in response that they had a remainder interest in the property "or alternatively, a portion of the value of such property should devolve upon them less such expenditures as may occur during the remainder of [Petitioner's] life."

{4} The parties agree that the pertinent sections of the will are the following:

II. We hereby give and bequeath to the survivor of us all of the rest, residue and remainder of our property, be it real, personal or mixed and of whatever class and character and wherever situate, to become the property of the survivor absolutely, with the sole exception, however, of matters set forth in paragraph V.

III.Should we die simultaneously or as a result of a common disaster, or upon the death of the survivor, then we give, devise and bequeath to our respective children all property acquired by either of us prior to our marriage, June 16, 1978, notwithstanding the manner in which property is held, and as to such property as we may have acquired thereafter, including the value of improvements to real estate, it is our wish that the same be divided equally between the two groups of children and by them divided among themselves equally per capita, and to their heirs absolutely.

. . .

VIII.We agree that the provisions hereof shall not be changed except by our mutual consent.

{5} The basic dispute between the parties arises out of the desire of Contestants to have confirmed for them a share in the estate as remaindermen and to have Petitioner deemed a mere life tenant. "[A] life tenant is a trustee for the remainderman in the broad sense that the life tenant cannot do injury to or dispose of the property, but may use the property only for the life tenant's exclusive benefit and take income on profits therefrom." 2 *Thompson on Real Property* § 19.04, at 749–50 (David A. Thomas ed., 2d Thomas ed.2000. The dispute has been framed so as to present two related issues. First is whether there was a contract to make a will with contestants as beneficiaries, and whether the use in paragraph II of the term "absolutely," as apparently giving Irene Armijo complete power over all the estate property during her lifetime, can possibly be defeated by other language contained in the will. The second issue is whether ambiguity exists in the will which would require additional factfinding to determine the testator's or testators' intent. It is agreed that the will is subject to NMSA 1978, § 45–2–701 (repealed 1993), predecessor statute to current § 45–2–514 (1993), which provided:

A. A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after the effective date of the Probate Code, can be established only by:

(1) provisions of a will stating material provisions of the contract;

(2) an express reference in a will to a contract: or

(3) a writing by the decedent evidencing the contract.

B. The execution of a joint will or contemporaneously executed wills does not create a presumption of a contract not to revoke the will or wills, unless otherwise expressed in both the joint will or the contemporaneously executed wills.

{6} The district court issued a four-page decision holding that the will was not contractual, denying Contestants' request for su-

pervised administration, demand for a jury trial and motion to compel discovery, and approving the sale of the real estate by Petitioner. The decision was appealed to the Court of 'Appeals, which agreed with the district court as to the non-contractual nature of the will, but reversed on all other points. *In re Estate of Armijo*, 2000–NMCA–008, ¶ 17.

*DISCUSSION*

 {7} Although we accord deferential review to facts found by the trial court, *see Strata Prod. Co. v. Mercury Exploration Co.*, 1996–NMSC–016, 121 N.M. 622, 627, 916 P.2d 822, 827, here the relevant facts are not in dispute. There is no disagreement that the will admitted to probate is Decedent's will and no controversy as to its exact wording. The parties dispute the legal significance of the words used in the will. There is no difference between the ability of this Court to review the will and that of the trial court. *See Kirkpatrick v. Introspect Healthcare Corp.*, 114 N.M. 706, 711, 845 P.2d 800, 805 (1992) ("When the resolution of the issue [of contractual ambiguity] depends upon the interpretation of documentary evidence, [the appellate court] is in as good a position as the trial court to interpret the evidence."). Therefore we employ a de novo standard of review as to the trial court's determination of whether the will evidenced a contract to make a will. Moreover, the de novo standard of review applies to the determination of whether the will is ambiguous because that is a matter of law. *See Garcia v. Taylor (In re Estate of Frietze)*, 1998–NMCA–145, ¶ 10, 126 N.M. 16, 966 P.2d 183. We also note that contestants are bound to establish the existence of a contract to make a will by clear and convincing evidence. *See In re Estate of Vincioni*, 102 N.M. 576, 581, 698 P.2d 446, 451 (Ct.App.1985) ("a contract to make a will must be clearly established and be certain and unambiguous").

*1. Contract to Make a Will*

 {8} There is language in the will indicating that under certain circumstances, property is to pass to contestants. Contestants argue that the language in the instrument creates a contract whereby property must pass to them under any circumstance. It should be noted that under New Mexico law, if the wife is not a life tenant under the devise but is bound by a contractual agreement not to revoke the will, then she holds an interest in the property that is "analogous to a life estate." *Foulds v. First Nat'l Bank*, 103 N.M. 361, 364, 707 P.2d 1171, 1174 (1985). Unless the devise to the surviving spouse explicitly contains a restraint on alienation, she "may freely use the estate and may convert it from one form to another," *id.*, including disposing of the property, as long as she does not act "with the fraudulent intent of depriving [the children] of the benefit of the contract in question … so as to bring the case within the rule that a court of equity will protect beneficiaries under [the] contract[ ]." *Schauer v. Schauer*, 43 N.M. 209, 214, 89 P.2d 521, 524 (1939) (affirming the dismissal of a complaint seeking an injunction to prevent the surviving spouse from selling land passing to her under a contractual will). Based on *Schauer*, Contestants have no right to dispute Petitioner's intended sale of the property unless they have evidence of a fraudulent intent to defeat the contract or unless the disposition of the property under the will itself did not leave Petitioner absolute ownership.

 {9} Contestants first argue that the use of the words "we," "us," and "our" throughout the will creates a contract to make a will because the testators were together binding themselves. A contract to make a will, or not to revoke a will, can only be established by "(1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to a contract; or (3) a writing by the decedent evidencing the contract." Section 45–2–701. Moreover, the execution of a joint or mutual will "does not create a presumption of a contract not to revoke the will" according to Section 45–2–701(B). *See also Foulds*, 103 N.M. at 363, 707 P.2d at 1173 (" '[T]he mere making of joint or mutual wills is not sufficient evidence of a contract to devise or bequeath property or a contract not to revoke a will.' " (quoting *Vincioni*, 102 N.M. at 582, 698 P.2d at 452); *Lindley v. Lindley*, 67 N.M. 439, 445, 356 P.2d 455, 458 (1960))

(concluding that while plaintiffs' argument was supported by respectable authority, this was outweighed by strength of language giving surviving wife absolute power of disposition over property). The words cited by Contestants are not "provisions of a will stating material provisions of [a] contract" as required by Section 45–2–701(A)(1), but merely expressions which would be used in any joint will. In addition, these terms do not constitute "an express reference ... to a contract" nor are they "a writing by the decedent evidencing the contract." *See* Section 45–2–701(A).

{10} Contestants further argue that paragraph VIII ("We agree that the provisions hereof shall not be changed except by our mutual consent.") constitutes a contract not to revoke a will. A contract to make a will, or not to revoke a will, is "held to be valid and enforceable, if it possesses the other elements of a valid contract." 1 William J. Bowe & Douglas H. Parker, *Page on the Law of Wills* § 10.1 (1960) (footnote omitted). "[A] contract between husband and wife for the execution of wills containing reciprocal bequests and bequests to a third person effective in enjoyment on the death of the testator last surviving is enforceable provided, ... [it] is supported by a sufficient consideration, and is definite and certain." 79 AmJur 2d, *Wills* § 768 (1975). Contestants adopt the theory of contracts enunciated in *Romero v. Earl*, 111 N.M. 789, 791, 810 P.2d 808, 810 (1991) (stating that "[c]onsideration adequate to support a promise is essential to enforcement of the contract and must be bargained for by the parties" and noting that something is bargained for " 'if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise' ") (quoting Restatement (Second) of Contracts § 71 (1981)).

{11} Even if there was a bargained-for exchange embodied in paragraph VIII, the extent of it would be that each gives up the right to execute a new will in return for the same forbearance by the other. Paragraph VIII does not, nor does any other section of the will, evidence a promise between either testator and a third party; the use of the term "absolutely" in paragraph II bears this out as the plain meaning of the document. *See* Black's Law Dictionary 7 (7th ed. 1999) ("Absolute" means "[f]ree from restriction, qualification, or condition").

{12} That contestants are not beneficiaries of the will is made clear by a comparison with two cases. One case which illustrates the point is *Lindley*. The will in that case had the same legal effect as the will herein, providing:

"Second: We hereby direct, that in the event of the one or the other of us survive the other, then it is the intent of each of us, that the survivor shall have and receive all of our property and estate, both real, personal or mixed, of every kind and nature and [wherever] situate, vested or contingent, absolutely free and clear of any conditions or restrictions, with full power of disposition as to any and all of the same, it being the full intention and desire of both of us to convey to the survivor an absolute title in fee simple estate to both the real, personal and mixed estate, the same being subject only to the death of one of us, the survivor shall then become the owner of said estate and the executor of this will and testament, without bond. Third: We do further direct that should there [be] any property or estate belonging to either of us or the survivor thereof, upon the death of the survivor of us, then we direct and give, devise and bequeath said property and estate which has not been otherwise disposed of by the survivor as follows...."

*Lindley*, 67 N.M. at 444, 356 P.2d at 457–58. The issue in *Lindley* was whether the third paragraph of the joint will limited the surviving spouse to a life estate "denying her the right to dispose of the property now in question." *Id.* at 446, 356 P.2d at 459. The plaintiffs in *Lindley*, like Contestants here, insisted that:

paragraph "Third" restricts the absolute bequest and devise provided in paragraph "Second" and reduced the former to a life estate in [the wife] upon her husband's death. They further argue that the will established vested interests in the residuary beneficiaries on [the husband's] decease which could not be[ impaired] ...

... Plaintiffs insist there is an ambiguity between the second and third paragraphs ...

*Id.* This Court agreed with the trial court that the will was free from ambiguity, and noted, "We fail to see the many intricacies and involvements claimed by plaintiffs, and thus dispose of this contention." *Id. Lindley* and the instant case are quite similar in that the contestants in both cases tried to import meaninglessness to the term "absolutely" and to create an ambiguity where there was merely a provision for secondary beneficiaries should any of the estate remain following its use and enjoyment by the primary beneficiary. The use of the word "absolutely" withstands contestants' efforts to infer a contract to make a will. The devises and bequests to the secondary beneficiaries are determined "upon the death of the survivor" according to paragraph III of the Armijo will.

{13} Another case on point is *In re Estate of DiSiena,* 178 A.D.2d 720, 576 N.Y.S.2d 952, 952 (1991). There, the relevant portion of the will read:

> We give, devise and bequeath unto the survivor of either of us, all the personal property and real estate that we may possess or own at the death of the first one of us to die, to have and to hold said personal property and real estate *absolutely and forever* ....

The will then provided, upon the death of the survivor, for the creation of a trust for the benefit of four children, funded by the real and personal property. When the husband died, all property was transferred to the wife, who executed a new will and was challenged by the children, who claimed the original will was contractually binding on the wife. The court said that "the mere existence of a joint will may not in and of itself establish an agreement binding the survivor to dispose of his or her estate in the manner specified in the instrument," *id.* at 953, and noted "judicial policy has been one of great reluctance to restrict the ambulatory nature of a will in the absence of clear and convincing evidence of such intent." *Id.* (Internal quotation marks and quoted authority omitted.) The court concluded that while the use of plural pro-

nouns is a factor that would support a binding agreement, "where the language of the joint instrument creates an absolute grant to the survivor, no contract will be found in the absence of qualifying language unmistakably demonstrating a 'clear intention to make the will contractually binding.'" *Id.* (Quoting *In re Estate of Wierzbieniec,* 93 A.D.2d 978, 461 N.Y.S.2d 653, 653 (1983);) *accord Howell v. Tompkins (In re Estate of Zeh),* 24 A.D.2d 983, 265 N.Y.S.2d 257, 260 (1965). We find relatively unconvincing cases to the contrary, such as *Rauch v. Rauch,* 112 Ill.App.3d 198, 67 Ill.Dec. 785, 445 N.E.2d 77, 80 (1983) (involving will giving survivor property "to be his or her absolute property;" holding where equal treatment for family is provided, it would be "illogical" to give survivor power to disrupt dispositive scheme).

{14} We hold the instrument in issue does not evidence a contract to make a will. The rationale of *Lindley* and *Di Siena* defeats contestants' argument that the will in this case constitutes a contract not to revoke the will and a contract to make a particular devise to Contestants.

## 2. Ambiguity

{15} *Contestants argue that the will is ambiguous as a general matter and may be shown through further investigation to create a contract or otherwise vindicate contestants as remaindermen.* For her part, petitioner seizes upon *Vincioni* for the proposition that New Mexico and the Uniform Probate Code disfavor contracts to make wills and provide that such contracts are enforceable only if the face of the will states the unambiguous material provisions of the contract or contains an 'express reference' to the contract. *See Vincioni* at 581, 698 P.2d at 451. While it is true that New Mexico adopted the purpose of the drafters of the Code to "tighten the methods by which contracts concerning succession may be proved," *id.* at 580, 698 P.2d at 450 (quoted authority omitted), *Vincioni* holds that New Mexico "disallows any extrinsic evidence for proof of the essential terms of a contract to make a will unless *a* writing is produced and signed by decedent which evidences the essential terms of the contract." *Id.* at 581, 698 P.2d

at 451 (emphasis added). This comports with Section 45–2–701(A)(3) (contract to make a will can be established by "*a writing by the decedent evidencing the contract*.") (Emphasis added.) Such a writing is apparently what contestants hope to find through further discovery.

{16} The Court of Appeals believed that "an ambiguity exists concerning the disposition of property under the will," *In re Estate of Armijo*, 2000–NMCA–008, ¶ 17 and that discovery was in order to determine decedent's intent and to aid in "any renewed argument that a contract to make a will has been proven by clear and convincing evidence." *Id.* In *Harvey v. Stone (In re Estate of Martin)*, 97 N.M. 773, 776, 643 P.2d 859, 862 (Ct.App.1981), *rev'd sub nom. N.M. Boys Ranch v. Hanvey*, 97 N.M. 771, 643 P.2d 857 (1982), Judge Donnelly quoted *In re Estate of Zahradnik*, 6 Kan.App.2d 84, 626 P.2d 1211, 1217 (1981):

> The critical test in determining whether an instrument is ambiguous is whether the intention of the testator or testatrix can be determined from the four corners of the will itself. If the testamentary intention can be gleaned from the face of the will, ambiguity does not exist; otherwise it does.

{17} "Where a will is unambiguous, extrinsic evidence is not admissible to vary, contradict or supplement the language of the will, or to give a different intention on the part of the testator from that stated in the will itself." *Martin*, 97 N.M. at 776, 643 P.2d at 862. It is clear that there are *potentially* three classes of property created by the will, each of which may be disposed of differently, but that under this analysis there is no limit on the right of petitioner to deal with the property during her lifetime. There is, first of all, "our property, be it real, personal or mixed and of whatever class and character and wherever situate." *All* this property is given and bequeathed to the surviving spouse. Second, there is some property in the first class, that is, "all property acquired by either of us prior to our marriage," which is contingently bequeathed to "our respective children," meaning what had been acquired by husband goes to his children and what

had been acquired by wife goes to hers *if* it remains in the estate upon the death of the surviving spouse. Third, there is some other property in the first class now and which *may* remain there "upon the death of the survivor," that is, property acquired after the marriage. The will clearly states that this property is to be "divided equally between the two groups of children and by them divided among themselves equally per capita." Thus, upon this analysis, the unquestionable intent of the testator is found, in conformity with the general rule espoused at 4 Bowe and Parker, *supra*, § 30.10, at 67–72:

> The courts approach the problem of construing a will with a prima facie assumption that the testator in drawing and executing his will had a purpose which was clear, definite and consistent throughout; and they will attempt to find this intention by construing every part of the will with reference to every other part so that, if possible, the court will construe the will as a whole and will give effect to every provision of the will.

{18} Contrary to the belief of the Court of Appeals, we find no ambiguity in this will. It was the postulated ambiguity which caused the Court of Appeals to allow further fact finding in the form of additional discovery, the admission of extrinsic evidence, and a jury trial, and which consequently mandated delaying Petitioner's right to sell the land. Since this matter has been resolved as a matter of law and because the "burden [and] expense of the proposed discovery outweighs its likely benefit," Rule 1–026(B)(2)(c) NMRA 2001, in view of discovery already taken, we reverse as to 1) allowing further discovery, 2) the admission of extrinsic evidence, 3) allowing a jury trial, and 4) restricting the right of the surviving spouse to sell certain land under the will.

*CONCLUSION*

{19} We affirm the judgment of the Court of Appeals that no contract to make a will exists. Since we find no ambiguity in the will, we reverse as to 1) allowing further discovery, 2) the admission of extrinsic evi-

dence, 3) allowing a jury trial, and 4) restricting the right of the surviving spouse to sell certain land under the will. Thus, the judgment of the Court of Appeals is affirmed in part and reversed in part. The cause is remanded for entry of judgment consistent with this opinion.

{20} **IT IS SO ORDERED.**

PATRICIO M. SERNA, Chief Justice, and JOSEPH F. BACA, Justice, GENE E. FRANCHINI, Justice, and PAMELA B. MINZNER, Justice, concur.