This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38394

**IN THE MATTER OF THE ESTATE OF**
**PAULINE S. PEREA, Deceased.**

**PAUL PEREA,**

Plaintiff-Appellant,

v.

**RUDY PEREA SR., Personal**
**Representative,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Louis P. McDonald, District Court Judge**

Crowley & Gribble, P.C.
Clayton E. Crowley
Albuquerque, NM

for Appellant

Sutin, Thayer & Browne
Lynn E. Mostoller
Felecia N. Cantwell
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** Plaintiff Paul Perea appeals from the district court's final order regarding the distribution of his mother Pauline S. Perea's estate (the Estate) and interpretation of the

Will of Pauline S. Perea (the Will). On appeal, Plaintiff argues that (1) the Will does not permit Defendant Rudy Perea Sr., who is also the personal representative (the PR) of the Estate and Plaintiff's brother, to deed a tract of real property to Plaintiff without first paying the reverse mortgage on the real property from the funds of the Estate; and (2) the district court erred in deciding that a house not specifically devised in the Will was part of the Estate's residuary and thus to be split equally between Plaintiff and Defendant. Because we conclude that the plain language of the Will supports the district court's order, we affirm.

## DISCUSSION

**{2}** Because this is a memorandum opinion, we set forth facts only as they become pertinent to our analysis. As an initial matter, we note that neither party argues that the Will is ambiguous and the parties dispute only the legal significance of the words used in the Will. In construing the legal significance of the words used in a will, "[t]here is no difference between the ability of th[e appellate c]ourt to review the will and that of the [district] court," and we therefore review the issues on appeal de novo. *In re Est. of Armijo*, 2001-NMSC-027, ¶ 7, 130 N.M. 714, 31 P.3d 372.

**{3}** "In construing the provisions of wills . . . the court must attempt to ascertain and give effect to the grantor's intent." *Cable v. Wells Fargo Bank N.M.*, 2010-NMSC-017, ¶ 11, 148 N.M. 127, 231 P.3d 108 (alterations, internal quotation marks, and citation omitted).

> In determining the testator's intention, the true purpose of the inquiry is to ascertain not what [they] meant to express, apart from the language used, but what the words [they] ha[ve] used do express; not to add words to those in the will to contradict its language, or to take words away from those in the will, even though the court may believe that the actual disposition of the testator's property which results through changing circumstances, was not contemplated by [the testator].

*Delaney v. First Nat'l Bank in Albuquerque*, 1963-NMSC-160, ¶ 30, 73 N.M. 192, 386 P.2d 711. In the present case, the language of the Will adequately addresses both issues before this Court, and we therefore rely on the terms of the Will itself to conduct our analysis.

## I. The Will Contemplated That Tract A Could Pass to Plaintiff Subject to the Reverse Mortgage Encumbering the Property

**{4}** In June 2018, Defendant transferred to Plaintiff a real property known as Tract A, which was devised to Plaintiff in Article II, Section C(2) of the Will. The house that Plaintiff lived in with his mother at the time of her death is situated on Tract A, and at that time, Tract A was encumbered by a reverse mortgage that the district court characterized as "an in rem obligation [on] the property itself." The district court

therefore ordered that Defendant deeded Tract A to Plaintiff subject to the reverse mortgage.

**{5}** On appeal, Plaintiff does not argue that the district court incorrectly concluded that the reverse mortgage is an in rem obligation but instead focuses on whether the Will required the Estate to pay the mortgage before Defendant deeded Tract A to Plaintiff. Specifically, Plaintiff argues that (1) the plain language of the Will required the Estate to pay the mortgage on Tract A; (2) the Will unambiguously permitted exoneration of the mortgage; (3) Defendant had no discretion as PR to convey the property as he did and the Estate's ability to pay the mortgage is a "red herring"; and (4) Defendant had no authority to deed Tract A to Plaintiff. We turn first to the plain language of the Will.

**{6}** The parties agree that Article I is the pertinent section of the Will that addresses the mortgage. In briefing to this Court, Plaintiff asserts that the Will includes the following language: "My personal representative will pay from the principal and income of my testamentary estate, . . . all my legally enforceable debts . . . including the mortgage on my home." The language from the Will that Plaintiff relies on is emphasized in the following quote, which sets forth all of Article I:

> My personal representative will take possession of my testamentary estate. *My personal representative will pay from the principal and income of any testamentary estate*, other than insurance proceeds or other exempt assets, *all my legally enforceable debts*, the expenses of my last illness, my funeral and burial expenses and the expenses of administering my estate in the amount my personal representative may deem proper and without regard to any limitation in the applicable law as to the amount of these expenses and without the necessity of prior court approval. I do not require the payment of any debt before it is due, and *my personal representative may renew and extend any debt existing at the time of my death, including any mortgage on my home.*

(Emphasis added.) The plain language of the entire provision addresses any mortgage in the context of the PR's power to renew or extend it but does not specifically require the Estate to pay off any mortgage encumbering Tract A and does not support Plaintiff's position. *See In re Cable Family Tr.*, 2010-NMSC-017, ¶ 13, 148 N.M. 127, 231 P.3d 108 ("As with other types of donative documents, the primary evidence of grantor intent is the plain language of each provision, when read in conjunction with the document as a whole."). Indeed, the Will does not require such debts to be paid before they are due. From this we determine that debts not yet due are not "legally enforceable debts" that were required to be paid, but debts that fell within the PR's discretion to pay.

**{7}** The Will also does not unambiguously permit exoneration of the mortgage. Plaintiff argues that despite the statutory abridgement of the common-law doctrine of exoneration, an exoneration of a mortgage interest is permitted when the decedent expressly provides for it. *See* NMSA 1978, § 45-2-607 (1993) (addressing

nonexoneration). He cites authority for the proposition that "[a] direction that 'I order and direct that all mortgages on any real property be paid' is specific enough to warrant exoneration from a mortgage." The Will, however, includes no such direction. It merely contains a general directive to pay any "legally enforceable debts." *See id.* ("A specific devise passes subject to any mortgage interest existing at the date of death without right of exoneration regardless of a general directive in the will to pay debts."). The Will does not specifically link the general directive to pay debts to the payment of any mortgage and explicitly leaves the payment of any mortgage to the discretion of the personal representative. We therefore conclude that the Will did not require Defendant, as PR, to use Estate funds to exonerate the mortgage on Tract A.

{8}     Plaintiff next contends that the liquidity of the Estate is not relevant to whether the Estate should be responsible for paying the reverse mortgage on Tract A, and Defendant was without discretion to convey the property encumbered by the reverse mortgage. The personal representative's discretion to handle encumbered assets, including mortgages, is addressed by NMSA 1978, Section 45-3-814 (1976), which permits the personal representative to pay, renew, or extend obligations "if it appears to be for the best interest of the estate." In these circumstances, the personal representative is directed to consider the best interests of the estate, including its liquidity. *Id.* While Section 45-3-814 does not explicitly give the personal representative the authority to convey the property with the mortgage to the distributee, any payment by the personal representative towards the mortgage is permissive and at the discretion of the personal representative, who would decide whether using estate assets to pay off a mortgage is in the best interest of the estate. *Id.* Here, Defendant argues, and Plaintiff does not dispute, that the Estate funds were insufficient to pay the reverse mortgage, and Defendant would have to have liquidated other real property in the Estate to cover the payment, including property devised to other heirs. Under Section 45-3-814, it was within Defendant's discretion as PR to determine whether the assets in the Estate were insufficient to pay the mortgage and whether a mortgage payment was in the best interest of the Estate.

{9}     Next, Plaintiff argues that Defendant was not authorized to convey Tract A because the district court had not ordered it. At the outset, the Will specifically authorizes the personal representative to transfer property without a court order. Defendant further filed for informal probate, and the district court confirmed him as PR with unsupervised administration and issued letters testamentary, which gave Defendant the powers and authorities provided by law. *See* NMSA 1978, § 45-3-711(A) (2017) (authorizing a personal representative with "the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of creditors whose claims have been allowed and others interested in the estate"). Although Plaintiff later filed for and was granted supervised administration, Defendant had authority—without a court order—to convey Tract A to Plaintiff before supervised administration began.

{10}     Last, we note that Plaintiff contends the district court improperly determined that the intent of the Will was to convey to Defendant and Plaintiff the value of nearly equal

shares of property and that intent was realized by transferring Tract A to Plaintiff subject to the mortgage. We need not, however, address this issue in the context of the mortgage because we conclude that the plain language of the Will leaves the payment of the mortgage within the PR's discretion and does not require such a debt to be paid. As a result, Tract A was appropriately conveyed to Plaintiff subject to the reverse mortgage thereon, and we save the question of intent for equal shares to be addressed in relation to the next issue.

## II.    The Disputed Portion of Property on Tract B Is Part of the Estate's Residue to be Split Per Stirpes

**{11}**    In addition to Tract A, Plaintiff was also devised two buildings that are situated on real property referred to as Tract B. These two buildings are specifically mentioned in the Will by street address and common nickname—the "Five Apartments" and 4247 Corrales Road, Corrales, New Mexico. The Will, however, omits and does not mention another building also located on Tract B, known as 4229 Corrales Road, Corrales, New Mexico, and referred to by the parties as the "[s]mall [h]ouse" or the "old house." The Will further directs that "the residue of [the] testamentary estate" was to be held in trust and divided "in equal shares among my then living lineal descendants, per stirpes." The district court ordered that because 4229 Corrales Road is not specifically devised in the Will, it passes through the residuary clause, which is to be distributed per stirpes.

**{12}**    Plaintiff argues that the Will expresses an intent to leave Tract B to him as a single, undivided tract. We disagree. As set forth above, in interpreting a will, our role is to determine "what the words . . . used do express; *not to add words to those in the will* to contradict its language, or to take words away from those in the will." *See Delaney*, 1963-NMSC-160, ¶ 30 (emphasis added). The Will does not devise 4229 Corrales Road and does not refer to Tract B at all. While Plaintiff argues that the old house does not fall into the residuary, he does not contest that as a matter of law, the residuary is designed to hold Estate assets that are not specifically bequeathed or that the Will directs that residue is to be split per stirpes (here, split equally between Plaintiff and Defendant). *See* NMSA 1978, § 45-2-709(C) (2011) (explaining per stirpes distribution). By its terms, the Will does not bequeath the building at 4229 Corrales Road, and also by its terms, the residue is to be split equally between Plaintiff and Defendant.

**{13}**    To argue to the contrary, Plaintiff relies on extrinsic evidence and inferences regarding his mother's intent. Plaintiff contends that because the Village of Corrales will not allow Tract B to be further subdivided and because his mother was a real estate investor who surely knew the limitations of her properties, she would never have constructed her Will to "unlawfully" subdivide Tract B. Extrinsic evidence, however, may not be used "to vary from or contradict the language of an unambiguous will or to defeat a testator's intent." *Tyrrell v. McCaw*, 1985-NMSC-113, ¶ 6, 103 N.M. 539, 710 P.2d 733. We therefore decline to analyze these arguments because we have determined that the Will's terms are unambiguous.

## CONCLUSION

**{14}** For the reasons set forth above, we affirm the district court.

**{15}  IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**SHAMMARA H. HENDERSON, Judge**